BRANDON *v.* YEAKLE.

Opinion delivered April 22, 1899.

WILL—CONSTRUCTION—CREDITS.—A testator bequeathed to his mother-in-law and to his mother each a half interest in "any stock, notes, bonds or other credits" of which he might die seized, and devised to his mother-in-law all the remainder of his personal effects not enumerated in the will. After execution of the will, the testator purchased a half interest in an insurance agency, paying for the same with the proceeds of the sale of stock held by him at the time the will was made, which interest he owned at his death. *Held,* that his interest as partner in the insurance business was included in the term "credits." (Page 380.)

Appeal from Pulaski Chancery Court.

THOMAS B. MARTIN, Chancellor.

*J. M. Moore* and *W. B. Smith,* for appellant.

For definition of "credit," see Century Dict.; Webst. Dict. There can be no *credit* where there is no *debt.* Drake, Att. § 544; 135 Ill. 67; 3 Mass. 288. Stock in a corporation is not a *credit.* 10 Beav. 47; 8 Eng. Cas. 438; 30 La. Ann. 1380; 5 Ala. 539; 53 Kas. 452-3; 4 Wood, 46. Nor is the interest of a partner in a partnership a *credit.* 4 Bates, Partnership, § 256; 12 Pet. 232; 54 Ark. 397; 26 Ark. 138. Good will is part of the assets of an insurance partnership. 9 Neb. 261; 1 Har. 253; 27 Beav. 53; 22 Beav. 84. The term "credit" is to be construed in the light of associated words. 4 Cush. 313; 1 Bl. Comm. 60; 95 U. S. 708; 3 Sumn. 386. Whether property is a *credit* or *personal effect* is determined by its condition at the time of the testator's death. 51 Ark. 70. The term "personal effects," in the residuary clause, is general, and entitles appellant to the property in controversy. 6 Am. & Eng. Enc. Law, 174; 2 Jar. Wills, chap. 23.

*S. R. Allen* and *E. W. Kimball,* for appellees.

A "*credit*" is "*anything due to a person.*" Vol. 1, Universal Dict. 1343, "credit," 5; 112 N. Carolina, 38; 8 Am. &

Eng. Enc. Law (2 Ed.), 231. The surviving partner holds the good will in trust, just as any other asset, for the benefit of the whole partnership estate. 9 Neb. 261; 1 Har. 253; 17 Am. & Eng. Enc. Law, 1159; 48 Ark. 557; 54 Ark. 397; 26 Ark. 138; 1 Bates, Part. § 256. For construction of word "effects," see 14 How. 400; 15 Vesey, 319.

BUNN, C. J. This is an appeal from a decree of the Pulaski chancery court construing the last will and testament of the late Robt. V. Yeakle, of the city of Little Rock.

Only two of the clauses of said will are directly involved— the third and the ninth clauses. The third clause reads as follows: "I give, devise and bequeath to my beloved mother-in-law, Mrs. Theresa E. Brandon, one-half ($\frac{1}{2}$) of any balance of money I may have in any bank, together with one-half ($\frac{1}{2}$) of any stock, notes, bonds or other credits, of which I may die seized, such stocks, notes, bonds or other credits to be sold as soon after my death, by my executor hereinafter named, as practicable, and to the best advantage, and one-half ($\frac{1}{2}$) of the proceeds thereof to be paid to my beloved mother-in-law, Mrs. Theresa E. Brandon, the other half ($\frac{1}{2}$) of all balance of money, proceeds of stock, notes, bonds or other credits to be paid, by my executor hereinafter named, to my beloved mother, Mrs. Virginia R. Yeakle, now of Baltimore, Maryland." The ninth clause is as follows: "I give, devise and bequeath to my beloved mother-in-law, Mrs. Theresa E. Brandon, any and all of the remainder of my personal effects of whatever nature not enumerated herein, to do with or dispose of as she may deem right, proper and best, without let, hinderance or control of any person whomsoever."

The will was made on the 4th day of September, 1886, and sometime in January, 1891, the testator bought a half interest in an insurance agency business in the City of Little Rock, paying therefor the sum of $2,150, apparently partly in cash and partly on credit, completing the payment in November, 1891; and it appears that the money thus paid was the proceeds of the sales of certain stocks in the Ladies' Building & Loan Association of Little Rock, as follows; On January 12, 1891, 80 shares to a party not named for $1,733.48; on

August 6, 1891, to W. Pollock, 60 shares, $750; on November 9, 1891, 40 shares to the association $816, aggregating the sum of $3,299.48,—a sum sufficient to cover the purchase price and interest on deferred payments of same,—clearly indicating that the said interest in the insurance agency business was paid for out of the proceeds of said stocks, a species of property named in said third clause of the will; and therein disposed of, had the same remained until the testator's death. But if the same was paid for in money on hand, money was also named in said third clause, and disposed of therein, and, had the testator died without investing the same in the insurance business or other species of property, would have been disposed of clearly under said third clause.

But this interest in the insurance business is not specifically named or referred to anywhere in the will, and it therefore follows that this transaction amounted to a change in the character of this much of his property between the time of making of his will and his death, which occurred on January 27, 1892, in the city of Little Rock.

The appellant contends that this interest in the insurance business amounts to little more than an interest in the "good will" of the business, there being but a small amount of property belonging to the same, consisting of a safe, desk and other like furnishings of an office for such a business; and that, as such property, it is not included in any of the clauses of property named in the said third clause of the will, but that it is really and in fact included in the general designation of the "remainder of my personal effects of whatsoever nature" given in the said ninth clause of the will; and this defines the issue in this cause, the appellee contending that this "good will" or insurance business is included in the word "credits" named in the third clause.

The business was sold by the surviving partner for the sum of $6,005.70, and one half, or $3,002.85, paid over by her to the executor of the will, as the share of the deceased in the business. If this insurance business is included in the designations of property mentioned in the third clause, then the amount so received by the executor belongs equally to the appellant and the appellee. But if this business is included in

the designation of property named in the ninth clause, the appellant gets the whole amount so received by the executor.

It is contended by the appellant that the word "credits" is but the correllative of "debts," and means nothing more than a balance of book accounts in favor of the credit side, or sometimes it means the trust given or received from one to another, and the like, and that since a "good will" of a business is not either of these, then it is not included in the third clause. It is contended by the appellee, on the other hand, that the word "credits," as employed in the will, is the equivalent of assets, and that therefore the insurance business is included in the descriptive words of that clause.

This kind of discussion is altogether unsatisfying in its very nature. It is philological in the highest degree, and necessarily theoretical, and does not always readily convince, when applied to the practical affairs of life. It necessarily leaves out of consideration the fact that the average man is not always accurate in his use of words, that provincialism and local association have much to do in giving meaning to words, and, above all, in this particular case, that the testator, in investing his money or proceeds of stock in this insurance business, in all probability never dreamed that he was thereby working a change in the testamentary disposition of his property; and that, had such a thing occurred to him at the time, he would have made the necessary change in the language of the will to make the disposition of the new acquisition conform to the first intention. And in this connection it is well to call attention to the fact that there is not a particle of evidence, not a circumstance, going to show that the testator had undergone a change of sentiment towards these relatives from first to last, nor of the fact that their relative conditions had changed at all, so as to make proper a different disposition of his property, relatively to them, from that he had first made.

This is not an instance where the testator has made a codicil to his will, whereby it is claimed on the one hand, and denied on the other, that he has made a change in the disposition of his property, or any portion thereof. If that were the case, we might well give the benefit of the doubt, to say the least, to the side asserting that he intended a change in the

disposition of his property from what he first intended.    Otherwise, why make it a codicil at all?    But the change in disposal
of the property, if change there was, in this instance, was brought
about by a change in the character of the property itself.    And
now we are called upon to say whether or not he intended (and
his intention is what we are striving for) any change, and, if
he did, how did he expect the change to affect his disposition of
his property?

Of course, the will must be construed with reference to the
property referred to therein as it stood, not when made, but at
the death of the testator, and so we are at last left to say what
disposition did the will make of the insurance business and the
proceeds thereof.

It is useless to speculate as to what the average man means
by the use of the word "credits" as descriptive of a class of
property.    If he means nothing more than a balance between
debits and credits, in which the latter are the larger, then it is
probable he would have said so in so many words.    If that is
not what was meant, there is no other meaning of the word, according to the argument of the appellant's counsel, which can
be called a definition of property at all, for surely such expressions as trust and confidence convey no idea of property.    It is
probable therefore that the testator used the word "credits" in
the sense of assets,—something belonging to him, but of an intangible nature.

Again, in order to maintain her position, appellant must
show, not only that the insurance business is not included in
the description and classification of property in the third clause,
but that it is in fact included in the ninth clause; otherwise the
testator would have died intestate as to this portion of his
property,—a construction not favored by the law,—and in which
event, moreover, the mother would take as a lawful heir, rather
than the mother-in-law.

But can it be said that this insurance business comes
within the classification of the ninth clause, which is thus expressed:   "Any and all of the remainder of my personal effects
of whatever nature?"   "Personal effects," without qualifying
words, generally include such tangible property as is worn or
carried about the person, but for the most part, as used in

wills, the phrase derives its meaning from descriptions of articles and classifications immediately preceding. Thus in the present case in the eighth clause the testator gave his books to his youngest brother; in the seventh clause he released certain secured claims to his mother, for the benefit of herself and his brothers and sisters; in the sixth clause he gave his gold watch to his brother Thomas; in the fifth clause he gave certain articles of jewelry and personal ornaments to his sister, Elizabeth J. Yeakle; in the fourth clause he gave his real estate in Arkansas to his oldest brother, Mahlon M., in trust for himself and the other brothers and sisters. These claims, in the order, were immediately followed by the ninth, in which the testator seems to have attempted to include whatever of personal effects he had inadvertently left out in the clause preceding, and express them under the term "remainder." For the meaning of "personal effects," see *Lippincott's Estate*, 173 Pa. St. 368.

It thus appears that it could be more easily shown that this insurance business falls under the classification in the third clause than under that of the ninth clause.

A majority of us cannot find anything in the chancellor's findings that we can object to, under the circumstances.

The decree is therefore affirmed.

Battle, J., dissented.