This is an appeal from a judgment of the district court of Silver Bow county, Montana, based upon a jury's verdict, which judgment declared invalid the will of John A. Benson which was dated February 5, 1938, and denied the probate thereof. The will is in the following words:
"I John Benson make this my last will and dispose of my property as follows
"I give to Anson to Benson Marie Weinstock Jennie, Mrs. Oscar $500.00 Nelson — to V.E.B. Benson — Lillian Nelson Carl W. Benson — $500.00 Mary Benson — former wife — share and share alike.
All the furnishings of the nine rooms to go to Mr. and Mrs. John B. Nelson — with the exception of my own apartment. All my personal effects, stocks, notes and bonds go to my old pal Carl Matter. *Page 29 
"I appoint Carl Matter executor of this my last will to serve without bonds and hereby revoke all former wills by me made.
"Dated at Butte Montana the 5th day of February 1938
"JOHN A. BENSON.
"Subscribed by John Benson as his last will in the presence of the undersigned who signed as witnesses at his request, in his presence and in the presence of each other —
"Kathryn McLeod 2031 Utah Ave. "Residing at St. Butte Montana "Rosamond Hutchison 57 West Platinum "Residing at St. Butte, Montana."
Previously, and on January 5, 1923, Benson had executed a holographic will in the following words:
"Butte Mont. Jan. 5 — 1923.
"I John A. Benson of Butte Mont hereby make my Last will Will I give all the Property of which I Die Possessed to Anton Benson — Cecelia Anderson — Aaron Olson Mrs. J.A. Benson all share equally and Five Hundred $500.00 to Marie Wienstock to All others one $1.00. I appoint Anton Benson as executor of this Will without Bonds I give my Power to sell all of my Estate without order of Court and I revoke all The Wills by me here tofore made I Declare That This will is entirely Written Dated and signed by my hand
"JOHN A. BENSON."
The latter will was found in his safe deposit box after his death. At the time of the execution of the contested will the existence of the first will was unknown to Carl Matter. When the will of February 5, 1938, was offered for probate, the executor, Carl Matter, submitted proof in support of the allegations in his petition. A jury having been impaneled, the contestants thereupon submitted evidence in support of their contest, and at the conclusion of all evidence the court submitted a single interrogatory to the jury, as follows: "Was John A. Benson competent to make a last will and testament at the time of the alleged signing of the instrument offered for probate as a will dated February 5, 1938?" The jury answered the interrogatory in *Page 30 
the negative, and thereupon the judgment aforesaid was entered.
By stipulation of the parties to the contest, during the course of the trial, the issue of fraud and undue influence in procuring the execution of the will was withdrawn. The evidence of the contestants to the effect that the testator was incompetent was limited to his physical and mental condition from Wednesday, February 2, 1938, when he was taken to a hospital, to the time of his death, Sunday, February 6, 1938, at 8:45 A.M. No question was raised as to his condition prior to that time. At the time of his death testator was 71 years of age. When taken to the hospital he was suffering from a combination of diseases, described by the physicians in attendance as diabetes mellitus and left lobar pneumonia. Two physicians testified that his condition grew continually worse from the time he was taken to the hospital until the time of his death, and that during most of the time, if not all, he was in a semi-comatose condition, which was described by one of the physicians as "lethargic state, very drowsy." The physician stated that one in such condition could be aroused but could know very little as to what was going on about him. The physicians' calls were very brief, and one kept no records whatever, his calls being more or less cursory. One of the physicians testified that the testator had been in a dying condition the last two days of his life, being Friday and Saturday, but admitted that one in that condition could be conscious up to the moment of death.
Another witness for the contestants, who was a personal acquaintance of the testator, testified that she called on him at the hospital but he did not recognize her. She stated that when she entered his room on Saturday no one was present and that she spoke to him but he failed to recognize her or respond. She left immediately thereafter and in the hall was met by one of the nurses who told her that the patient was very low and should not see visitors. Another witness for the contestants, a close friend of the testator, testified that Benson did not recognize him on Friday and Saturday February 4 and 5, but admitted he was not at the hospital Saturday evening. *Page 31 
The proponents of the will for probate introduced evidence to the effect that on Wednesday just prior to going to the hospital the testator had stated to a disinterested witness that he expected to draw a new will, and again, on Saturday, shortly before executing the will, he told the same witness that he had all the facts in his mind and knew just what he was going to do in his new will. On Saturday evening he requested the executor, Carl Matter, to procure an attorney to draw his last will, which he endeavored to do but could not get the attorney to go to the hospital as he had a cold. He was given a form by the attorney which at the hospital one of the nurses recopied and inserted testamentary bequests and devises pursuant to the dictation of the testator. The subscribing witnesses, one of whom was the testator's nurse during his last illness, gave evidence that the testator was not acting under duress, menace or fraud and was of sound mind at the time he executed the will and understood what he was doing. There is no mention in the doctors' or nurses' charts and records that the testator was ever in a state of coma, or unconscious.
It was further developed by the testimony that none of those present at the time of the execution of the will on February 5, 1938, knew the names or addresses of several of the persons mentioned in the will as beneficiaries, and Matter knew very little about the testator's property holdings. It was further shown that one of the beneficiaries under the will of January, 1923, had died prior to the execution of the will of February, 1938, and was not mentioned therein; and that a beneficiary named in the last will was born after the first will was executed.
We must bear in mind that, in the solution of the question[1, 2] here presented, one who contests a will has the burden of proof once the allegations of the petition for probate have been sufficiently proven. (In re Murphy's Estate, 43 Mont. 353,116 P. 1004, Ann. Cas. 1912C, 380.) Also, that a testator may dispose of his property as he sees fit, and that courts cannot make wills for persons. (In re Silver's Estate, 98 Mont. 141,38 P.2d 277.) *Page 32 
It is noted that some of the provisions in the will offered for probate are very similar to those in the will of January, 1923, which latter will was not known to exist until after testator's death.
The court in submitting the question of competency to the jury, did so by the following instruction: "Instruction No. 8. You are instructed that when applied to the capacity required to make a valid will, the word `incompetent' should be construed to apply to any person, whether sane or insane, who is, by reason of old age, disease, weakness of mind or other cause, unable to understand what property he has, the relationship which he bears to those who would naturally be the objects of his bounty and the disposition of his property he may at the time be making."
"Instruction No. 12. You are instructed that if you believe from a preponderance of the evidence that John Benson at the time of the execution of the will of February 5, 1938, was able to understand and carry in mind the nature and situation of his property and his relation to his relatives and those around him with clear remembrance as to those in whom and those things in which he has been most interested, or was capable of understanding the act he was doing and the relation in which he stood to the objects of his bounty, or was not suffering from the effect of disease which affected his mental condition, which led him to dispose of his property otherwise than he would if he knew and understood what he was doing, then you will find that he was at the time mentally competent to make a will, and your findings should be for defendants."
It appears to us that the physical facts surrounding the[3] execution of the will and the acts of the testator speak louder than the witnesses in supporting the proponent's contention that the testator was competent. Viewed in the light of the foregoing instructions, and from the evidence offered, it is clear that there is no question of incompetency by reason of insanity, or senility, or disease prior to the time testator was taken to the hospital, and that at the time of the execution of the will he had in mind the names of the objects of his bounty, and also the character *Page 33 
of his property, and the manner in which he desired to dispose of it, which in some respects corresponded to his previously expressed intention as indicated in his will of 1923. That his mind was clear and that he was competent at the time he executed the will in question, is indicated from the facts that he omitted the name in his second will of a person named in his first will who had died in the intervening time, and also named a person who was born after the first will was executed. Other persons named in his second will were unknown to Matter and the subscribing witnesses, they being the only ones present when he executed the will. It cannot be said that he was suffering from the effects of disease which affected his mental condition to such an extent that it led him to dispose of his property otherwise than he would if he knew and understood what he was doing. It appears that the testator gave intelligent direction in the execution of his will.
The contestants criticize the first devising clause of the[4, 5] will of February 5, 1938, as being ambiguous and meaningless. It is not necessary that a testator designate and describe property which he seeks to dispose of by his will, if it otherwise appears what is meant. Since it is in effect a residuary clause and other subsequent provisions are specific bequests, the first devising clause of the will would certainly mean, when read in connection with the opening paragraph of the will, that he intended to give all of his property, share and share alike, to the persons designated in that clause, which includes his former wife, divorced from him for many years. The subsequent clauses are merely exceptions to the entire devise, namely, $500 to Marie Weinstock and $500 to Lillian Nelson, then all furnishings of nine rooms to Mr. and Mrs. John B. Nelson, except his own apartment, and lastly "all my personal effects, stocks, notes and bonds go to my old pal Carl Matter." There is evidence that Matter was a fishing companion and close friend of the testator, and it is quite natural that he would remember such a companion in his last will. In view of the fact that his estate went largely to others than Carl Matter and but a modest share *Page 34 
went to him, it is obvious why the charge of undue influence and fraud was withdrawn during the course of the trial.
It was stipulated by counsel in the record that the estate consisted of the following property:
"Checking account in the First National Bank, Butte ......................................... $ 714.26 Savings Account, same bank ...................... 5,482.48 Gold Coin ....................................... 87.50 Certificate of Indebtedness of Masonic Temple and Interest ...................................... 521.50 Unpaid balance on mortgage ...................... 2,000.00 Flats on North Idaho, worth ..................... 5,000.00 Savings account in Metals Bank .................. 904.47 ____________ $14,701.21"
Therefore, aside from the specific cash bequests of $500 each to Marie Weinstock and Lillian Nelson, all of the estate under the provisions of the will goes to the contestants and others named in the first devising clause, share and share alike, except personal effects, certificate of indebtedness of Masonic Temple and unpaid balance on a mortgage. This is clear from reading the entire context of the will.
While "personal effects" have sometimes been held to include[6] all personal property, it cannot be so construed in this will. The testator specifically mentioned money in two bequests and mentioned no money in the bequest to Carl Matter, but on the other hand mentioned stocks, notes and bonds. He likewise made no mention of specific property in the first devise, which therefore would include both real and personal property, subject to the exceptions thereafter named.
Carl Matter, being a "fishing pal" of the testator, would be the one most likely to be remembered with personal effects, in view of the distant relationship of some of the contestants and the testator not leaving a wife, parents, brothers, sisters or children. It is quite apparent, therefore, that he had in mind, in using the words "personal effects," the ordinary meaning ascribed to "effects" as stated in 48 C.J. 1046: "When used without *Page 35 
qualifying words, generally include such tangible property as is worn or carried about the person, although not restricted to that meaning. * * * As used in wills its meaning may be derived from descriptions of articles and classifications immediately preceding, but when not restricted by the context, it may mean everything embraced in the description `personal property.'"
This court held in the case of In re Spriggs' Estate,70 Mont. 272, 225 P. 617, that the word "effects" could include both real and personal property. As above shown, however, the rule prevails that the word must be defined in connection with the entire context of the instrument wherein it appears.
While this court has held in In re Sales' Estate, 108 Mont. 202,89 P.2d 1043, that it will not interfere with a judgment based on a contest in the probate of a will if there is substantial evidence to support it, nevertheless, here we believe the record fails to show substantial evidence to support the verdict.
The judgment of the district court is reversed, and it is ordered that that court admit the will to probate, which is dated February 5, 1938.
MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ANGSTMAN and ERICKSON concur. *Page 36