[Civ. No. 2373. Fourth Appellate District.—March 19, 1940.]

In the Matter of the Estate of HARRIET LOVEJOY, Deceased. Mrs. FRED EATON, Appellant, v. SAN DIEGO TUBERCULOSIS ASSOCIATION AND REST HAVEN PREVENTORIUM, Respondent.

W. C. Wilde for Appellant.

E. Swift Torrance for Respondent.

BARNARD, P. J.—This is an appeal from a decree determining that the appellant was entitled, on distribution, to receive only the personal effects of the deceased and that the respondent was entitled to all other property left by her.

The question presented in the trial court and upon this appeal is as to the proper interpretation of the next to the last paragraph of an holographic will left by the deceased, which reads as follows:

"My Last Will and Testament.

"I wish to be cremated, (ashes *not* to be sent East) All my property to be sold. After all expenses paid. If anything left to go to Rest Haven–Home for Children, in San Diego–California.

"Deeds & Contracts of property, consisting of lots in San Diego–California and vicinity in my box at Bank of America, Broadway & Sixth Sts. San Diego–California.

"Harbison Canon–lot 12–block C.

"Sunset Cliffs–lot–19–block 8.

"Crown Point–lots–81 and 287.

"*Lost* Avocado lot at Encinitas–California to Ed Fletcher–June 1931.

"*In my box, San Diego
California.*

"One share in Commonwealth Edison Company #320962,
Chicago–Illinois.

"Money in Savings Dept. of First National Bank–San
Diego. Bay City Loan Association, San Diego, California.

"First State Bank–South Haven–Michigan.

"My personal property to be given to Mrs. Fred Eaton
4135 Ibis St. San Diego–California, for her to distribute.

"I have appointed Mr. Fred Eaton–4135 Ibis St. San
Diego,–California–as my executor, without bonds.

"HARRIET LOVEJOY

"San Diego–California

"October 4–1934."

The appellant contends that it conclusively appears
that the words "All my property" in the first paragraph
of the will refer only to real property and that the words
"personal property" in the next to the last paragraph should
be interpreted as those words are defined in the Civil Code.
(sec. 663). The respondent argues that the words "personal
property", as used in the bequest to Mrs. Eaton, should be
interpreted in the more limited sense of purely personal ef-
fects.

In considering a similar problem the court, in *Estate of La
Fetra,* 14 Cal. App. (2d) 599 [58 Pac. (2d) 678], said:

"In the interpretation of wills section 106 of our Probate
Code enjoins upon courts the duty to view the testamentary
words in their ordinary and grammatical sense, unless a
clear intention to use them in another sense can be collected,
and that other can be ascertained; while technical words in
a will are to be taken in their technical sense, unless the
context clearly indicates a contrary intention or discloses that
the testator was unacquainted with such technical sense. (2)
In determining the intention of the testatrix here we must,
as appellants insist, stand by the words of the will, and no
intention should be attributed to the testatrix which cannot
reasonably be drawn from the language of the document it-
self; but it is generally recognized that a testamentary in-
strument is to be examined with a view to discovering the
decedent's testamentary scheme or general intention, and

that the apparent meaning of particular words, phrases and provisions is to be subordinated to this scheme, plan or dominant purpose.''

After commenting on several cases, the court further said:

''The cases herein cited are of value to us in this case in that they indicate the propriety of applying to the phrase 'personal property' a limited and restricted meaning and operation, consistent with the testatrix's evident intention.''

In *Estate of Combs,* 136 Cal. App. 286 [28 Pac. (2d) 711], it is said:

''Furthermore, as the respondent contends, we see no violation of the provisions of section 106 of the Probate Code. That rule commands us to take the words of the will 'in their ordinary and grammatical sense . . . ' The trial court did so. Because the statute defines the words 'personal property' the appellant contends that the statutory definition is the ordinary meaning. In that assumption she begs the question. The words 'personal property' have many meanings. 'Although popularly the term personal property is used in a somewhat restricted sense to include only goods and chattels, tangible things, the subjects of personal use, in its broad and general sense it includes everything which is the subject of ownership not coming under the denomination of real estate; . . . ' (50 C. J. 760.) The broad meaning happens to coincide with the statutory definition. (3) When under such circumstances a court is construing the meaning of a will it will not be confined to an examination of the meaning of the words used in one particular sentence without regard to other sentences contained in the will. But it will consider all of the sentences and when possible give some force and effect to each one. (Probate Code, sec. 103.) That rule is peculiarly applicable to a holographic will.''

In *Estate of Puett,* 1 Cal. (2d) 131 [33 Pac. (2d) 825], the court said:

''It is generally recognized that a testamentary instrument is to be examined with a view to discovering the decedent's testamentary scheme or general intention, and that the apparent meaning of particular words, phrases and provisions is to be subordinated to this scheme, plan or dominant purpose. The technical import of words should not prevail over the obvious intent of the testator.''

In *Estate of Cowden,* 10 Cal. App. (2d) 481 [51 Pac. (2d) 1165], the court said:

"There is direct authority for the determination of the trial court that the personal property given to the brother should be limited to the personal effects of the deceased. (*Estate of Norrish,* 135 Cal. App. 166 [26 Pac. (2d) 530] ; *Estate of Combs,* 136 Cal. App. 286 [28 Pac. (2d) 711].) In each of these cases the words 'personal property' were so construed. In the latter case it was pointed out that the words 'personal property' taken in the popular sense may mean only goods and chattels which are the subject of personal use, while in a legal sense they embrace all classes of property except real property, and it was held that the former definition should be accepted because the will as a whole showed that the words were not used in their more comprehensive sense."

Under these established rules, the trial court was justified in interpreting the disputed clause of this will as giving to Mrs. Eaton only the personal effects of the testatrix and in refusing to give to her all of the personal property, as defined by the code, left by the deceased. It is apparent that the testatrix did not use both the word "property" and the words "personal property" in their legal and technical sense. This being true, it is hardly reasonable to suppose that she intended to give to either of these expressions its strict legal meaning. After providing that all of her property is to be sold and disposed of in a certain manner she proceeds to describe her property, both real and personal, and states where the various items of property and some of the evidence of ownership may be found. It appears that her personal property, which is thus described or particularly mentioned in the will, was of a value about equal to that of her named real property and it is a natural inference, from the language used and the place where these matters appear in the will, that she intended to include both of these classes in the property to be sold, and to which she refers as "all my property".

She then refers to "my personal property" which is "to be given to" the appellant "for her to distribute". In speaking of this personal property which is to be given to the appellant she does not describe the same or tell where it is to be found,

and does not even make an outright gift of it to the appellant, but provides that it is "to be given" to her "to distribute". The latter clause indicates that the personal property thus to be given to the appellant is something other than the personal property theretofore specifically mentioned in the will, which seems to have been included in the property which was to be sold. It would be somewhat out of the ordinary for a testatrix to provide that bank accounts, building and loan certificates of deposit and shares of stock should be given to another for the purpose of distributing the same without providing to whom they should go. It would be more natural for a testatrix to do this with respect to her clothing, ornaments and other small articles which are usually considered as personal effects. From the context, it is reasonable to suppose that this testatrix had her personal effects in mind when she wrote the paragraph of the will in question, and that she intended thereby to give such articles to the appellant.

This interpretation gives effect to all clauses in the will. Taken in its entirety, the will indicates an intention on the part of the testatrix to provide for and set up a general scheme, whereby all of her property which was described or located should be sold and applied as set forth in the first paragraph of the will and whereby her personal effects, which were either too numerous or of too little value to justify specific mention, were to be turned over to the appellant to be distributed by her. The interpretation placed upon the will by the trial court must be sustained.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.