51 Cal.App.2d 206 (1942)
Estate of MAY ROSALIE DURAIND, Deceased. ROSALIE GARDNER et al., Appellants.
v.
BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Executor, etc., et al., Respondents.
Civ. No. 11981. 
California Court of Appeals. First Dist., Two. 
Apr. 10, 1942.
 O'Connor, Neubarth & Moran and Harold H. Cohn for Appellants.
 Thomas P. O'Brien and W. Urie Walsh for Respondents.
 STURTEVANT, J.
 On the 27th day of September, 1940, the trial court made an order admitting to probate as the will of the decedent three several instruments which were, omitting signatures and attesting clause, in words and figures as follows:
 "Last Will and Testament of May Rosalie Duraind"
 "I, May Rosalie Duraind, also known as May R. Duraind, being of sound and disposing mind and memory, and not acting under the fraud, duress, menace or undue influence of any person whomsoever, do hereby make, publish and declare this instrument to be my Last Will and Testament in the manner following, that is to say:"
 "First: I hereby revoke all Wills and Codicils to Wills heretofore at any time made by me."
 "Second: I declare that I am a single woman, and that I have never been married; that both of my parents are deceased, and that my sisters and brother are deceased, and that my nearest living relatives are cousins."
 "Third: I direct that I be buried in accordance with my situation in life, and that the funeral arrangements are to be handled by Ed Kenny of Gantner, Felder & Kenny. Ed Kenny knows my wishes in this respect, he having recently buried my sister, Honore Therese Duraind. I direct that my Executor, hereinafter named, pay all of my just debts and my funeral expenses as soon as this can lawfully and conveniently be done after my demise."
 "Fourth: I give, devise and bequeath unto the Province *208 of the Holy Name, a California corporation, all of my property, whether real, personal or mixed, together with all property over which I have the power of testamentary disposition and the power of appointment, and I direct that said Province of the Holy Name dispose of said property in accordance with the instructions given to said corporation by me."
 "Fifth: In the event that for any reason the devise or bequest contained in the preceding paragraph hereof should fail or be declared invalid, with respect to the whole or any part thereof, I then hereby devise and bequeath all of the rest, residue and remainder of my estate, together with all property over which I have the power of appointment and the power of testamentary disposition, to the Very Reverend John Leonard Callahan, O. P., in his individual capacity, absolutely, and free and clear of any trust, express or implied. Should the Very Reverend John Leonard Callahan, O. P., die before this Will becomes operative, I then give, devise and bequeath all of said property to the Reverend William Lewis, O. P."
 "Sixth: I make no provision in this, my Last Will and Testament, for any other person, whether claiming to be an heir of mine or entitled to share in my estate, and should any person object to this, my Last Will and Testament, or contest the same, I give to such person so objecting or contesting the sum of one dollar ($1.00) and no more; provided they prove in a Court of law that they are entitled to share in my estate."
 "Seventh: I appoint the Bank of America National Trust & Savings Association as Executor of this, my Last Will and Testament."
 "In witness whereof, I have hereunto set my hand this 6th day of September, 1939."
 "May Rosalie Duraind."
 "San Francisco, California, Oct. 27, 1939."
 "I hereby appoint my cousins, Doretta Yoell and Rosalie Gardner, to take charge of my personal property and distribute it according to my instructions."
 "May Rosalie Duraind."
 "I, May R. Duraind, make this instrument a codicil to my last will and testament."
 I. I give and bequeath my household furniture, bric-a-brac *209 and personal effects to Doretta Yoell and Rosalie Gardner and Gladys Atkinson share and share alike.
 "In all other respects my said will is affirmed. Doretta Yoell shall make a proper division of this personal property."
 "May Rosalie Duraind."
 Dated October 28, 1939.""
 Said order dated September 27, 1940, has not been appealed from and has become final. (Code Civ. Proc., sec. 939.) Thereafter, on the 6th day of May, the trial court admitted to probate as a codicil of said will a document in words and figures as follows, to wit:
 "Saturday, Aug. 24, 1940"
 "I hereby declare my wish, if death should overtake me in the night, that my Cousin Rosa and her daughter Dorothy, take care of my house and affairs. The house has been made over to the Dominican Fathers of St. Dominic's Church, but my personal property I wish to leave to my cousins, Rose & Dorothy, also Gladys and Dottie, etc. Give what they do not want to the Sisters of the Holy Family. My Santa Cruz property can be sold and the money used to establish a burse in Mama's name at St. Dominic's Church. God bless you all."
 "Signed, May R. Duraind,"
 or May Rosalie Duraind,
 Rosalie Gardner and Dorothy Gardner contend that the trial court should have granted their petition to admit said instrument to probate as the will of said decedent and to revoke the letters of the Bank of America National Trust and Savings Association, hereinafter called the bank, as executor under the order dated September 27, 1940. We think the contention has no merit.
 There is no contention that the decedent was incompetent. The instrument dated September 6, 1939, was a formal will. It must be presumed the decedent knew that to be the fact. After that date she never stated directly that she revoked that instrument. By the instruments dated October 27 and October 28, 1939, she modified slightly its dispositive terms, and both of the latter instruments were admitted to probate as parts of her last will and testament. However, on August 24, 1940, she wrote again. As shown above it was admitted as a codicil.
 [1] We think the court did not err in refusing to revoke the letters of the bank as executor. Its order dated September *210 27, 1940, was based on the unequivocal words contained in the instrument dated September 6, 1939. The instrument dated August 24, 1940, did not expressly name any one as executor. Bearing in mind decedent was the mistress of a household, that she was the owner of a very large number of items of furniture, bric-a-brac, jewelry, and household effects; that she had given instructions as to the disposal thereof; that Doretta Yoell and Rosalie Gardner at least knew of those instructions, we think it is quite reasonable to hold that, to carry into effect those said instructions, she wrote in the said instrument the words, "that my Cousin Rosa and her daughter Dorothy take care of my house and affairs." She wanted them to care for her house and to impound and hold safely said personal effects until her executor should take possession. That she feared the items might be injured or purloined appears from the expression "if I should die in the night." What else prompted that expression? As material to the naming of executors what mattered it whether she died during the night or during the day? That she was speaking of guarding her personal effects and not of changing the executor of her will we think is clear and the trial court did not err in refusing to revoke the letters of the bank.
 [2] Neither are we of the opinion that the instrument dated August 24, 1940, was a will. The instrument dated September 6, 1939, was a formal will. It, as modified by the instruments dated October 27, 1939, and October 28, 1939, had been adjudged the will of the decedent. The instrument dated August 24, 1940, did not expressly revoke the will as so adjudged nor was it wholly inconsistent therewith. It did not purport to dispose of decedent's real estate. It did purport to make some minor modifications which will later be discussed. It contained references to her real estate and tied into the provisions of the will as so adjudged. Under all of those facts the trial court held that it was a codicil. The court was warranted in so holding. (68 C.J. 412, sec. 2; Cheever v. North, 106 Mich. 390 [64 N.W. 455, 58 Am.St.Rep. 499, 37 L.R.A. 561].) [3] Moreover, in so holding the court made a reasonable construction of the provisions of said instrument and that construction may not be disturbed on appeal. (Estate of Maloney, 27 Cal.App.2d 332, 334 [80 P.2d 998].)
 The instrument dated August 24, 1940, was admitted to probate as a codicil on May 6, 1941. As noted above an appeal was taken from that order. On June 30, 1941, a decree *211 was made granting a petition for partial distribution. An appeal was taken from that decree also. We pass to a consideration of that appeal.
 [4] The appellants contend the court was without jurisdiction to hear and determine the petition for partial distribution pending the determination of the appeal from the order refusing to admit the document of August 24, 1940, as the last will and testament of the decedent and refusing to appoint appellants executrices of the last will and testament of the decedent. The jurisdiction to hear a petition for partial distribution is set forth in the Probate Code, sections 1000-1003. The appellants do not claim that the order appealed from was made without a full compliance with said provisions. But their contention is that the perfecting of an appeal from the order dated May 6, 1941, "... stays proceedings in the court below upon the judgment or order appealed from. ..." (Code Civ. Proc., sec. 949.) They cite no decision directly in point. We think none can be found. Because the trial court in its order dated May 6, 1941, called the document dated August 24, 1940, a codicil and refused to call it a will, or because it refused to revoke the letters of the bank and appoint the appellants executrices, did not and should not stay the hands of the probate court to proceed with the administration of said estate. In its order of May 6, 1941, the trial court placed no construction on the instrument dated August 24, 1940. Said instrument was first construed June 30, 1941, at a time when the court had jurisdiction. If it was incorrectly construed that was error within but not in excess of its jurisdiction. Such error, if any, is before us on this appeal. We therefore pass to a consideration thereof.
 [5] When on June 30, 1941, the petition for partial distribution came on for hearing, the probate court was called upon to construe the instrument dated August 24, 1940, and determine its dispositive provisions. In doing so that court held that the words "personal property" as therein used meant "personal effects." The appellants earnestly contend such interpretation was too narrow and that the words meant, in effect, all property not real estate. It will be conceded at once that said words sometimes have that meaning. But the question before the probate court was what meaning did the decedent have when she used the words? The answer, we think, is to be found in the record. On September 6, 1939, she executed the formal will leaving to the Province "... all of my property, *212 whether real, personal or mixed. ..." On October 27, 1939, she wrote longhand, "I hereby appoint my cousins Doretta Yoell and Rosalie Gardner to take charge of my personal property and distribute it according to my instructions." (Emphasis ours.) The next day she showed that paper to her attorney and he wrote the instrument dated October 28, 1939, which provides: "I. I give and bequeath my household furniture, bric-a-brac, and personal effects to Doretta Yoell and Rosalie Gardner and Gladys Atkinson share and share alike. In all other respects my said will is affirmed. Doretta Yoell shall make a proper division of this personal property." (Emphasis ours.) Those two papers read together show clearly the meaning of the decedent when she used the words "personal property." Her meaning in the use of the words is made clearer by other facts contained in the record. The decedent was the owner and occupied a dwelling in San Francisco. As shown by the inventory she was possessed of a very large number of items of furniture, bric-a-brac, jewelry, and other belongings. In a gift to the church such articles were hardly appropriate. Said items were clearly the subject of the instrument dated October 28, 1939. Doretta Yoell was designated to make "a proper division" thereof. When writing the instrument dated August 24, 1940, the decedent again used the words "personal property." That they were used in that instrument in the same sense in which they were used in the instrument dated October 27, 1939, appears as follows. Referring to the property the decedent said, "Give what they do not want to the Sisters of the Holy Family." That language used regarding cash, stocks and bonds, would hardly be adopted by an individual who made four wills or codicils in less than a year.
 At all times herein mentioned the decedent had four cousins. Each was over the age of twenty-one years. In the instrument dated September 6, 1939, she left all of her property to the Province. She provided that if any one contested her will such person should receive $1.00. She made no mention of any one of the cousins. However, the appellants claim that the instrument dated August 24, 1940, in effect left them about $18,000 in cash, bonds, stock, etc., or about seventy-five per cent of her entire estate. If the decedent intended to make any such change it is manifest that she would have used clear words evidencing the same.
 [6] The several points regarding the validity of the order *213 made May 6, 1941, have been discussed because learned counsel for the parties have presented them. However, the order dated September 27, 1940, ordered the instruments dated respectively September 6, 1939, October 27, 1939, and October 28, 1939, admitted to probate as the will of the decedent. That order had become final. It determined what was the last will and testament of the decedent. It was a decree in rem and bound the world. (Estate of Baker, 170 Cal. 578, 585 [150 P. 989.]) True it is that if a later will containing a revocatory clause was produced it could be admitted to probate. (Prob. Code, sec. 510; Estate of Moore, 180 Cal. 570 [182 P. 285].) But the record in the cited case shows it involved a subsequent will which in terms revoked prior wills. The instrument dated August 24, 1940, does not purport to do so. At most it was a supplementary testamentary instrument. Counsel cite no statute and no decision in this state which is to the effect that it could be admitted to probate after the order dated September 27, 1940, had become final. In other jurisdictions the rule is a subsequent document under such facts will not be admitted to probate. (Re Bronson, 185 Wash. 536 [55 P.2d 1075, 107 A.L.R. 238 and notes 249].) As the point has not been presented by either party we express no opinion thereon.
 The orders appealed from are affirmed.
 Nourse, P. J., and Spence, J., concurred.