[Civ. No. 12856.   First Dist., Div. One.   July 26, 1945.]

Estate of VICTORIA A. DOUGLASS, Deceased. EL-
DRIDGE A. DOUGLASS et al., Appellants, v. EARL S.
DOUGLASS et al., as Coexecutors, etc., Respondents.

Crist & Beene for Appellants.

Williamson & Wallace for Respondents.

KNIGHT, J.—This appeal was taken by Eldridge A. Douglass and Leon F. Douglass, Jr., two of the residuary legatees named in the will of their mother, Victoria A. Douglass, deceased, from that portion of a decree of partial distribution distributing two automobiles, a 1941 Cadillac touring sedan and a 1941 Ford station wagon, to Florence Douglass Langdon, the decedent's daughter. The controversy concerning the automobiles arose out of the question of the construction of the last sentence of the sixth clause of the will which reads as follows:

"I hereby give and bequeath all of my jewelry, with the exception of my wrist watch, to my beloved daughter, FLORENCE DOUGLASS LANGDON. My wrist watch, I give and bequeath to my beloved sister MARY ACKERMAN.

"I hereby give and bequeath all of my flat silverware to my son LEON F. DOUGLASS, JR. *All of the rest of my personal effects of every kind and description,* including all of the rest of my silver, and all of my linens and china, I give and bequeath to my beloved daughter FLORENCE DOUGLASS LANGDON." (Italics ours.)

The probate court held that the automobiles were part of the "rest" of the personal effects of the testatrix, within the meaning of the last sentence of the sixth clause, and it is our opinion that the construction so placed thereon by the probate court is not only reasonable and entirely consistent with the other provisions of the will, but that the adoption of any other construction would be contrary to the intention of the

testatrix as expressed by her in a subsequent clause of her will.

The appeal is presented on a clerk's transcript, and the following are among the facts appearing therefrom: The will, a copy of which is set out in the transcript, was executed on April 3, 1940; and the testatrix died on April 29, 1943. At the time she made the will she was married and the mother of six children, four of whom survived her. She was survived also by two grandchildren. The surviving children are adults. There are three sons, Leon, Eldridge A. and Earl S. Douglass, and one daughter, Florence Douglass Langdon. Prior to the execution of the will, the testatrix conveyed certain property in trust, and the will disposes of all other property of which she was the owner, which, so far as the record shows, did not include any real property. The only specific bequests made by her are those embodied in the sixth clause of the will; and by the seventh paragraph she bequeathed and devised the residue of her estate to her four children, share and share alike. The estate was of large value; it was but little indebted and part of it consisted of cash. As to the value of the estate the record shows that prior to the filing of the petition for partial distribution, the executors deposited the sum of $47,500 with the county treasurer to cover the payment of inheritance taxes which had not then been fixed, and that afterwards the court made an order "compromising and fixing" the tax in the sum of $28,386.69. Therefore, taking into consideration the statutory exemptions, and computing the tax at the statutory rates, the value of the estate is shown to be in excess of $400,000. Earl S. and Eldridge A. Douglass were named as executors of the will; and the seventh clause of the will provided, among other things, that if prior to filing the petition for the distribution of the estate the legatees could not agree in writing as to the division of the property devised and bequeathed to them under the seventh clause of the will, the executors, at their discretion, were authorized to divide it as equally as possible "in order to avoid the distribution of undivided interests. . . ." An agreement was reached as to the division of all property except the automobiles, which Florence claimed under the last sentence of the sixth clause of the will, and her claim was supported by her brother Earl; whereas Leon and Eldridge took the position that the automobiles constitute part of the residue of the estate and, as such, should be distributed to the four children, share and share alike. Thereafter the executors filed a petition for par-

tial distribution asking that the property thus divided by the four children among themselves be distributed to them in conformity with their agreement; and the executors having failed to agree as to the disposition of the automobiles, the four children joined in signing a written consent, which was filed with the probate court, that the automobiles "be distributed as the court may direct." However, appellants being dissatisfied with the probate court's decision have taken this appeal.

With respect to the principal issue it may be stated that the general rule adhered to in most jurisdictions is, that where the testator uses the term "personal effects" in a limited sense, that is, without qualification, the term ordinarily will be construed as signifying an intention to limit the bequest to such personal property as is worn or is carried about or attends the person, but that where the testator has amplified the term by adding qualifying words or phrases thereto, the term will be construed as having been used by him in an unlimited and unrestricted sense, signifying an intention to include therein all personal property intimately associated with the testator; and some cases go even further in holding that such unlimited use of the term may include property other than of the character last mentioned.

In the present case it is manifest that the phrase "All of the rest of my personal effects of every kind and description" was not employed by the testatrix in any restricted sense so as to exclude from its broad scope and operation all personal property except such as is worn or carried on the person, because, as will be noted, immediately following the quoted phrase the testatrix expressly included therein personal property that could not be worn or carried on the person, namely, silverware, linens and china. That being so, it very properly may be held that the testatrix intended to include all personal property of "every kind and description" which had been intimately associated with her person; and, clearly, automobiles used by her for her own convenience and enjoyment fall within such classification as much as the silverware, linens and china.

True, none of the evidence that was introduced before the probate court at the hearing of the petition for partial distribution has been brought before this court. However, the facts disclosed by the record on appeal are amply sufficient to support the inference that she maintained a home and that the

automobiles were used by her for her convenience and enjoyment. In this regard the record shows that she was a resident of San Mateo County and a woman of large wealth; and that she was the owner of linens and china, and a large quantity of household silver. The articles of silverware are listed in the petition for partial distribution and it appears therefrom that nearly all of it consists of dining service silver. The two automobiles were of the type ordinarily used for enjoyment and convenience,—a Cadillac touring sedan, appraised at $1,450, and a Ford station wagon, appraised at $865; and there is nothing whatever in the record indicating that the testatrix was engaged in any sort of a business enterprise, or that either automobile was utilized by any other person for business purposes.

In the state of the record above set forth there is no ground, legal or factual, upon which this court would be justified in holding as a matter of law, contrary to the conclusion reached by the probate court, that the automobiles should not be classified as part of the personal effects of the testatrix.

Furthermore, the Legislature of this state has prescribed certain rules governing courts in the interpretation of wills, among which are: That a will is to be construed according to the intention of the testator, and that where his intention cannot have effect to its full extent, it must have effect as far as possible (Prob. Code, § 101); that where the meaning of any part of a will is ambiguous or doubtful, it may be explained by any reference thereto or recital thereof, in another part of the will; that all parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole; but that where several parts are absolutely irreconcilable, the latter must prevail (Prob. Code, § 103). ▪ However, in this connection it is well to state that in construing a will the intention to be sought for is not that which existed in the mind of the testator, but is that which is expressed by him in the language of the will. (*Estate of Major*, 89 Cal. App. 238 [264 P. 542]; *Estate of Ogden*, 78 Cal.App. 412 [248 P. 680]; *Estate of Bourn*, 25 Cal.App.2d 590 [78 P.2d 193].)

Here, the result of sustaining appellants' contention, that the automobiles should be classified as part of the residue and distributed accordingly, would mean that the two automobiles would be distributed to the four children in undivided shares; and that is precisely what the testatrix did not want to hap-

pen, for, as declared by her in the seventh clause of her will, she authorized the executors to divide the property disposed thereunder among the four children "in order to avoid distribution of undivided interests."

In support of their position, the appellants seek to apply the doctrine of *ejusdem generis*. The substance of their argument seems to be that by adding the phrase *"including all of the rest of my silver, and all of my linens and china"* to the phrase immediately preceding, to wit, "All of the rest of my personal effects of every kind and description," the testatrix signified an intention to restrict the broad and comprehensive preceding phrase to such personal property as falls within the classification of silverware, linens and china. (Italics ours.)

With this argument we are unable to agree. Generally speaking, the word "including" is not construed as a restrictive or exclusionary word, and as here used it carries no restricted meaning. It clearly signifies a meaning just the opposite. It is a word of enlargement and expresses the idea that the thing in question constitutes only a part of a greater whole (*In re Frey's Will*, 154 Misc. 421 [277 N.Y.S. 269]), and conveys the same meaning as the words "together with," "as well as," or "also." (*In re Link's Estate*, 47 N.Y.S.2d 40.) As said in *In re Goetz's Will*, 71 App.Div. 272 [75 N.Y.S. 750] : " 'Including' is not a word of limitation. Rather is it a word of enlargement, and in ordinary signification immplies that something else has been given beyond the general language which precedes it. Neither is it a word of enumeration of the property which would pass by the express terms of the language of gift." And in that case it was held that in a bequest of all personal property, including furniture, plate, etc., the word "including" did not limit the bequest to the property enumerated after the wording, but covered all of the testator's personal property. In the present case, if the testatrix had intended to restrict the meaning of the term "personal effects," she could easily have done so by using some common word or words of restrictive meaning, for example, "consisting of" or "comprising" instead of the word "including."

It has been suggested that if the testatrix had intended the automobiles to be included in the term "personal effects" it is inconceivable that she would not have itemized them in her "including" phrase. The difficulty with that suggestion is

that the will was executed in April, 1940, whereas both automobiles were 1941 models,—from which it reasonably may be inferred that she did not acquire the automobiles until after the will was executed; and certainly as the owner of an estate of this magnitude she was not called upon to revise her will every time she acquired some additional personal effects, particularly since the unlimited phrase, ''All of the rest of my personal effects of every kind and description'' was obviously broad enough to include any after acquired personal effects.

As heretofore stated, many cases are to be found, particularly in outside jurisdictions, construing the meaning of the term ''personal effects'' as used in wills; but an examination of those cases clearly demonstrates that no fixed rule of construction can be laid down to fit all cases because of the difference in the wording of wills, and the duty imposed upon courts to construe the language of each will, as far as possible, in accordance with the testamentary plan or scheme of the testator as expressed by him in his will. It is evident, therefore, that while certain legal principles may be deduced from those previously adjudicated cases, the holdings therein are not decisive in construing wills involved in later cases, unless, of course, the wording of the wills is identical; and identical wills are seldom found. Among the cases dealing with the subject of ''personal effects'' is the *Estate of Sorensen,* 46 Cal.App.2d 35 [115 P.2d 241], wherein the question arose as to whether a clause in a will bequeathing ''All Jewelry and personal effects'' included money received by the testatrix from the sale of her home; and it was held that the clause of the will embodying those words was not a general residuary clause and therefore did not include the money. In so holding the court went on to say that the term ''personal effects'' as there used in the will referred to clothing and ornaments, or any small articles which usually attend the person. The court, in that case, cited and quoted from a Minnesota case (*Barney* v. *May,* 135 Minn. 299 [160 N.W. 790]) wherein it was held that the wording of the will there under consideration did not include money or securities. The portion of the decision quoted is as follows: ''The word 'personal,' used with 'effects,' much restricts its meaning. In common understanding the expression 'personal effects,' without qualifying words, includes only such tangible property as attends the person, or, as variously stated, 'such tangible property as is worn or carried about the person' (*Brandon* v. *Yeakle,* 66

Ark. 377 [50 S.W. 1004]; *Lippincott's Estate,* 173 Pa. 368 [34 A. 58]), or 'goods and items of property having a more or less intimate relation to the person'. . . . But to hold that the term 'personal effects,' as used here, includes a large residue of money and securities, nothing of which she then owned, and which she evidently did not have in mind, would do violence to the language of the will.''

Another case of interest is the *Estate of Lovejoy,* 38 Cal. App.2d 69 [100 P.2d 547]. There the testatrix after providing that all her ''property'' was to be sold and disposed of in a certain manner, proceeded to describe her property, both real and personal, stating where the various items of property and some of the evidence of ownership could be found, and then in a subsequent paragraph she gave her ''personal property'' to a named person ''for her to distribute.'' The court went on to say that under well-established rules the will was to be interpreted as a whole, to give effect to the testatrix's general scheme, and it was held that the words ''personal property'' as used in the subsequent paragraph of the will meant personal effects, such as clothing, ornaments and other articles which are usually considered as personal effects.

A later case worthy of mention is the *Estate of Duraind,* 51 Cal.App.2d 206 [124 P.2d 330]. There the entire will consists of several separate instruments executed at different times, all of which were holographic. In one of them, executed on October 27, 1939, the testatrix declared (p. 208): ''I hereby appoint my cousins, Doretta Yoell and Rosalie Gardner, to take charge of my personal property and distribute it according to my instructions.'' The next day, October 28, 1939, she executed another instrument containing this bequest: ''I give and bequeath my household furniture, bric-a-brac and personal effects to'' certain named beneficiaries. The reviewing court held that the probate court was justified in construing the words ''personal property'' as used in the first instrument as meaning ''personal effects'' as that term was used in the latter. A case bearing closest analogy to the present one is *In re Jones' Estate,* 128 Misc. 244 [218 N.Y.S. 380], wherein a physician bequeathed to his wife ''all household goods, furniture, personal effects''; and it was held that the term ''personal effects'' as there used included two automobiles of which the testator was the owner, ''even though one automobile had been employed by the doctor very largely in making calls upon patients.''

There are also cases holding that the term "household effects" as used in the wills under consideration in those cases included family automobiles, among them being *In re Winburn's Will,* 139 Misc. 5 [247 N.Y.S. 584], wherein that term was held to include a Lincoln limousine and a Ford sport roadster. The court there said that the test as to what are household effects would appear to be whether the disputed articles are used in or by the household, or for the benefit or comfort of the family. In the case of *Mathis* v. *Causey,* 172 Ga. 868 [159 S.E. 240, 75 A.L.R. 111], the court held that an automobile used by a doctor in his profession was not included in that provision of his will bequeathing all his clothing, personal jewelry, library, furniture, works of art, silverware, household goods, "and other personal effects located at, and used or adapted for use in connection with, my residence on Sixth Street in said City of Vienna and at my office in the Forbes Building in said City of Vienna." But the decision therein is based mainly upon the restrictive words above quoted, the court saying: "The personal effects given in this legacy are those located at, or used or adapted for use in connection with, testator's residence, and his office. These words restrict and limit the meaning of the words 'other personal effects,' as used in this bequest."

The foregoing cases have been referred to merely as illustrative of the statement hereinabove made that because of the difference in the wording of wills and the duty of courts to construe the language used in each will as far as possible in accordance with the testamentary plan or scheme appearing from the will, no fixed rule of construction can be established to govern in all cases.

In the present case, being guided by the rules of construction prescribed by the Probate Code, and construing the will herein as a whole, it is our conclusion that the last sentence of the sixth clause of the will included the automobiles. Accordingly, that portion of the decree from which the appeal was taken is affirmed.

Ward, J., concurred.

PETERS, P. J.—I dissent.

As pointed out in the majority opinion, we are here called upon to interpret, without the benefit of any extrinsic evidence, a clause of a will. The Supreme Court in *Estate of*

*Platt,* 21 Cal.2d 343 [131 P.2d 825], has adopted the rule that when a question of construction is presented to an appellate court, and the document alone is before the court without extrinsic evidence, it is the duty of the appellate court to exercise its independent judgment as to which of several constructions is the most reasonable, without reference to the construction given by the trial court. (See, also, *Moore* v. *Wood,* 26 Cal.2d 621, at p. 630 [160 P.2d 772].) The majority opinion does not disclose whether. it has applied this rule or whether it has followed the rule of those cases impliedly overruled by the *Estate of Platt* (see concurring opinion of Carter, J.; 21 Cal.2d 352, 353) which held that the construction of a document by the trial court will be upheld if reasonable, even though there is a more reasonable contrary construction. In my opinion, if the rule of the *Estate of Platt* be applied, there can be no doubt but that the construction given the clause in question by the trial court, even if it be conceded that such construction was a possible one, is not as reasonable as the construction that the automobiles in question are not included within the phrase ''personal effects.'' For that reason I believe the decree of partial distribution should be reversed.

The problem presented can be stated as follows: By the phrase ''All of the rest of my personal effects of every kind and description, including all of the rest of my silver, and all of my linens and china'' did the testatrix intend to include the two automobiles owned by her? The problem is really divided into two parts: First, what is the ordinary and usual meaning of the phrase ''personal effects,'' and secondly, is there anything in the clause in question or in any other portion of the will that indicates that the phrase was used in other than its usual and ordinary meaning?

It must be kept in mind that the adjective ''personal'' has several meanings. When the term is used to modify the word ''property'' it is usually used in opposition to the adjective ''real,'' and includes all property that is not real property. But when used in a will to modify the word ''effects'' it is obviously intended to be used in the sense of intimately connected with the person of the testator. While there is some confusion in the cases, largely caused by a failure to recognize this difference in the meaning of the word ''personal,'' the overwhelming weight of authority is that the phrase ''personal effects'' appearing in a will, in the absence of an

indication of a different intent, naturally and ordinarily includes only such tangible personal property as is worn or carried about the person, or is intimately associated with the person. (*Mathis* v. *Causey,* 172 Ga. 868 [159 S.E. 240, 75 A.L.R. 111]; *Child* v. *Orton,* 119 N.J.Eq. 438 [183 A. 709]; *In re May's Estate,* 135 Minn. 299 [160 N.W. 790]; *In re Lippincott's Estate,* 173 Pa. 368 [34 A. 58]; *Brandon* v. *Yeakle,* 66 Ark. 377 [50 S.W. 1004]; *First Methodist Episcopal Church South* v. *Anderson* (Tex.Civ.App.), 110 S.W. 2d 1177; *In re Benson's Estate,* 110 Mont. 25 [98 P.2d 868]; *Carr* v. *Railton,* 66 R.I. 225 [18 A.2d 646, 20 A.2d 374].)

We are not without express authority on this point in this state. In *Estate of Sorensen,* 46 Cal.App.2d 35 [115 P.2d 241], the court was interpreting a clause in a will providing that all jewelry and personal effects were bequeathed to a designated legatee, and the question was whether that clause included some money left by the deceased. In holding that it did not, the court stated (p. 38): ". . . . it is obvious that this clause refers to clothing and ornaments or any other small articles which usually attend the person, and is not a general residuary clause. (*Estate of Lovejoy,* 38 Cal.App.2d 69 [100 P.2d 547].)

"In *Barney* v. *May,* 135 Minn. 299 [160 N.W. 790], the court said:

" 'The word "personal," used with "effects," much restricts its meaning. In common understanding the expression "personal effects," without qualifying words, includes only such tangible property as attends the person, or, as variously stated, "such tangible property as is worn or carried about the person." (*Brandon* v. *Yeakle,* 66 Ark. 377 [50 S.W. 1004]; *Lippincott's Estate,* 173 Pa. 368 [34 A. 58]), or "goods and items of property having a more or less intimate relation to the person" . . . . But to hold that the term "personal effects," as used here, includes a large residue of money and securities . . . would do violence to the language of the will.' "

In *Estate of Lovejoy,* 38 Cal.App.2d 69 [100 P.2d 547], the court held that the words "personal property" as used in the will under construction meant "personal effects," and that those words (p. 74) meant: "clothing, ornaments and other small articles which are usually considered as personal effects."

The majority opinion suggests that automobiles may fall within this limited category. If an automobile is a "personal effect" so would a yacht, or a private railroad car, or a riding stable, or a carriage, be "personal effects." The phrase cannot thus be extended. If used without words of explanation the phrase must be held limited to tangible personal property worn or carried about the person, or intimately connected with the person. Automobiles do not fall within that category.

The next question is whether there is anything in the paragraph or in the entire will that indicates that the phrase "personal effects" was here used in other than its ordinary and usual meaning. Certainly the clause "of every kind and description" adds nothing to the phrase "all of . . . my personal effects." If the phrase "personal effects" only includes those things intimately connected with the person, then the phrase "personal effects of every kind and description" is likewise so limited—it is still limited to "every kind and description" of "personal effects."

When the balance of Paragraph Sixth is read the intent with which the testatrix used the phrase is made crystal clear. She was obviously fearful that the phrase "personal effects" might be given too limited a meaning. To obviate this difficulty what did she do? In the first sentence of the paragraph she gave her wrist watch to a named sister and the balance of her jewelry to her daughter. In the very next sentence she bequeathed her flat silverware to a named son. Then she bequeathed "all of the *rest* of my personal effects of every kind and description, *including* all of the rest of my silver, and all of my linens and china" (italics added) to her daughter. Words could hardly be used that would more clearly show that by this clause the testatrix had in mind her jewelry, her silverware, her linens, her china, and other articles of a personal and intimate nature. She was obviously fearful that the phrase "rest of my personal effects of every kind and description" would not include silverware, linens and china, so she added the phrase which specifically included those articles. There is grave doubt whether such articles of household use would be included within "personal effects" in the absence of language showing such an intent. She so carefully defined what she had in mind by "personal effects" that, had she intended impersonal articles such as automobiles to be included, she would have so specified.

The majority opinion points out that the will was drafted before these specific automobiles were acquired. Just what help that fact is in ascertaining the testatrix' intent is not clear. Certainly, it cannot be implied that by mentioning silverware, linens and china, she intended to include automobiles not yet purchased. By Paragraph Sixth she either carefully excluded all personal property except of the types mentioned (and this would exclude automobiles) or she entirely forgot about the fact that she then had, or might later acquire, automobiles. In either event, automobiles are not included.

There are other words in Paragraph Sixth that throw some light on the subject. After disposing of her jewelry and some of her silverware the testatrix stated that ''all of the rest'' of her ''personal effects'' should go to her daughter. By the use of the word ''rest'' the testatrix indicated with unusual clarity what she had in mind, namely, the other articles similar to the ones just mentioned. The rule of construction to be applied in such cases is clear. It is not unusual in construing a statute or a contract or a will, to find, as here, general and specific words associated together. In such event it is the usual rule of construction that the general words take color from the specific ones and the general words will be restricted, in the absence of a contrary expressed intent, to a sense analogous to the specific words. This is the doctrine of *ejusdem generis*. It means simply that when the Legislature, the contracting parties, or a testator use general words in connection with an enumeration of particular things, in the absence of a contrary expressed intent, experience has shown that in most cases the general words were used to discribe things of the same general nature or class as those specifically enumerated. The reason for this common sense rule of construction is obvious. If the general words were intended to prevail in their broadest sense the special words need not, and would not, have been employed at all. (See, generally, 23 Cal.Jur. § 130, p. 755.) The doctrine is, of course, applicable to the construction of wills. (*In re May's Estate*, 135 Minn. 299 [160 N.W. 790]; *Brandon* v. *Yeakle*, 66 Ark. 377 [50 S.W. 1004]; *In re Lippincott's Estate*, 173 Pa. 368 [34 A. 58]; *In re Campbell's Estate*, 171 Misc. 750 [13 N.Y.S.2d 773]; *Carr* v. *Railton*, 66 R.I. 225 [18 A.2d 646].) In *Richmond* v. *Rhode Island Hospital Trust Co.*, 46 R.I. 113 [125 A. 228], the court held that general words somewhat similar to those here involved

could not be interpreted to include an automobile because the specific enumeration in the clause in question, which was a much broader specification than is here involved, limited the general words, under the rule of *ejusdem generis*.

This rule of construction should be followed in this case unless there is something expressed in the will itself to show that it is not applicable. In this case but one construction of the clause is reasonable. When the testatrix stated "all of the *rest* of my personal effects of every kind and description," she obviously was referring to things similar to jewelry and silverware—articles she had just mentioned. The word "rest" as there used is synonymous with "other," and it is the same as if she had said "all of my other personal effects." Had she used the word "other," there can be no doubt but that the doctrine of *ejusdem generis* would be applicable. (*In re Johnson*, 167 Cal. 142 [138 P. 740] ; *People* v. *Strickler*, 25 Cal.App. 60 [142 P. 1121] ; see cases collected, 50 Am.Jur. at p. 250, fn. 3 ; 59 C.J. at p. 982, fns. 64 and 65.)

There is another phrase in the paragraph in question that is of some assistance. After disposing of the "rest" of her "personal effects" the clause continues "including all of the rest of my silver, and all of my linens and china." I have no doubt that by this phrase the testatrix expanded the ordinary meaning of the phrase "personal effects." Normally, as already pointed out, it is very doubtful if silver, linens and china would be included within the meaning of the words "personal effects." The majority opinion is undoubtedly correct in holding that the word "including" is usually a word of "enlargement," and implies that something "has been given beyond the general language which precedes it." But the real question is not whether the word "including" is a word of "enlargement" or a word of limitation, but rather, assuming it is a term of enlargement, how far has the class been enlarged or opened up? On this point the testatrix left no doubt. She enlarged the meaning of "personal effects" to include silver, linens and china—articles, which, while not as intimate as the usual things included within the meaning of "personal effects," are still personal to a woman and to a homemaker. By no reasonable interpretation can it be said that the class was opened up to include such articles as automobiles.

The majority seek some support for their construction from a phrase appearing in Paragraph Seventh of the will. This is

the residuary paragraph of the will. After bequeathing the residuum to her four living children, share and share alike, the testatrix states that in the event the legatees entitled to share her estate "as provided in this paragraph number 'Seventh' " cannot agree to the division of the property, then the executors are authorized to partition the property "in order to avoid the distribution of undivided interests." A reading of the paragraph demonstrates to a certainty that the last-quoted phrase applies by specific limitation only to Paragraph Seventh, and has no application at all to Paragraph Sixth. To so construe it is a strained, unnatural and, in my opinion, an improper construction.

It is my view that the decree of partial distribution should be reversed.