[Civ. No. 26928. Second Dist., Div. Two. July 26, 1963.]

Estate of MAY-BELLE F. DOOLITTLE, Deceased. LONG BEACH DAY NURSERY et al., Legatees and Appellants, v. SECURITY FIRST NATIONAL BANK, as Trustee, etc., Petitioner and Respondent; ROBERT L. TAFT et al., Legatees and Respondents.

Ball, Hunt & Hart for Legatees and Appellants.

No appearance for Petitioner and Respondent.

Walhfred Jacobson for Legatees and Respondents.

SMITH, J. pro tem.*—This is an appeal from an order instructing personal representatives with respect to distribution of the estate. The trial judge held that the appellants, Long Beach Day Nursery, Adelaide Tichenor Home for Crippled

---

*Assigned by Chairman of Judicial Council.

Children, and First Congregational Church of Long Beach, hereinafter referred to as the Three Charities, were residuary legatees and the respondents, Robert L. Taft and Stella E. Taft, hereinafter referred to as the Tafts, were given a specific bequest. Based on that holding the trial court instructed the executor to charge both taxes and expenses of administration to the gift to the Three Charities. Taxes were chargeable to the residue because of an express provision in a codicil, and expenses were so chargeable because of section 750, Probate Code.

The sole issue on appeal, as stated by respondents is: "Was the trial court correct in ruling that the bequest to The Tafts is a *specific* one while the gift to the Three Charities is a *residuary* one?" (Italics are those of respondents.)

The parties agree that since there was no extrinsic evidence, the intent of the testatrix is one of law for us to determine from the will and codicils. There are three testamentary instruments for us to construe. First—*The will of 1927* provides in pertinent part:

1) It gave personal belongings and household effects to one brother and two sisters.

2) It gave the "residue" in trust to the same brother and sisters for life and thereafter to the Three Charities.

3) Among miscellaneous other provisions, respondents also rely upon a provision which would leave only one dollar to any person who would "defeat or change any part of the *testamentary plan* of this Will. . . ." (Italics added by respondents.)

All agree that under the original will the gift to the Three Charities is residuary.

Second—*The 1932 codicil* provides in pertinent part:

"First: I direct that every gift, devise, bequest and interest given under my said Last Will, or any codicil thereto, shall be delivered free from all estate and inheritance taxes, and that such taxes be paid, first, out of any property undisposed of by this Will; or, second, out of the residue of my estate."

There is still no disagreement in interpretation. All agree that the Three Charities up to this point were residuary. Between this date and the date of the next codicil, the brother and two sisters died. This made the testamentary

trust unnecessary but still left the Three Charities residuary legatees.

Third—*The 1960 codicil* provides in pertinent part:

"FIRST

"I declare that I am Trustor and Beneficiary in a Trust in which SECURITY-FIRST NATIONAL BANK, a national banking association is Trustee, and upon my death all of the assets remaining in said Trust shall go as provided in my said Last Will and Testament dated the 17th day of January, 1927, and the Codicil dated November 4, 1932.

"SECOND

"All assets and possessions I may have at the time of my death which are not in said Trust aforesaid, I devise and bequeath in equal shares to my friends, Robert L. Taft and Stella E. Taft, in equal shares."

The trust referred to in this codicil was not in existence at the time of the original will and the 1932 codicil. It was an *inter vivos* trust, the testatrix being trustor and beneficiary, and at her death the assets were to go to her executor or administrator. At the time of death it contained assets appraised at over $180,000 and the nontrust property consisted of assets appraised at over $50,000, as shown by the "Inventory and Appraisement" in the record.

Our problem is whether this codicil changed the gift to the Three Charities into a specific legacy and created a new residuary legatee, the Tafts. We hold that it did.

Since the residue is to be charged with both taxes and expenses, both appellants and respondents argue that their legacy is the specific one and the others receive the residue. They rely on the same rules of construction and argue that the intent of the testatrix is clear when the three testamentary documents are considered. Appellants stress the language of the 1960 codicil and argue that it is both later than and inconsistent with the earlier documents. They point out that if additional property had been acquired or discovered it would go to the Tafts under the express language of the 1960 codicil, thereby demonstrating that the Tafts are residuary. (See Prob. Code, § 161, subd. (4).) They point out also that if at the time of death there had been no trust or trust property, the legacy to the Three Charities would have failed, thereby demonstrating that the Three Charities received only a specific bequest under the 1960 codicil. (See Prob. Code, § 161, subd. (1).) Respondents do not directly

answer these points, but stress the clear (and undisputed) meaning of the earlier documents and argue that the basic intent and plan thereof has not been changed. They point out that under the terms of the original will there was a "testamentary plan," so important to the testatrix that she left only one dollar to any person who opposed it. Respondents further argue that this plan involved giving certain specific property to a brother and two sisters and giving a residuum through the use of a trust to the Three Charities. It is their argument that this "testamentary plan" has not been fundamentally changed by the 1960 codicil. The Tafts are substituted for the brother and sisters and given their specific gift, and the Three Charities get everything in the trust, just as before. They argue that we are not concerned with the meaning of mere individual words, but we are concerned with the intent of the testatrix and that her intent has not changed since her "testamentary plan" is still intact. All concede that under the original plan the Three Charities are residuary and, since there has been no basic change, the respondents argue that the Three Charities are still residuary within the intent and meaning of the will.

There are two very serious fallacies in such argument:

First: It confuses the testamentary trust, which never came into being, with the *inter vivos* trust which existed for several years. The two are entirely separate and distinct. Also, as will appear next, the two did not include the identical property.

Second: The record simply does not support the contention that the Tafts merely replace the brother and sisters. The brother and sisters were given (1) "personal belongings and household effects," and (2) an equitable life estate in the residue. Respondents clearly are claiming no identity with the latter, but are contending that there is nothing in the record to show that the "personal belongings and household effects" given to the brother and sisters are not identical with "All assets and possessions I may have at the time of my death which are not in said Trust aforesaid" which is the property given to the Tafts. Even if there were nothing in the record to contradict it, it would still be a remarkable coincidence if they were identical, too remarkable and speculative to support such a finding. However the record is not in dispute as to what nontrust properties were found at the time of death. The Inventory and Appraisement lists them as follows::

"Appraised Value"

"Assets Bequeathed to Robert L. Taft
and Stella E. Taft in equal shares

Cash:

| | |
|---|---|
| Refund from Security First National Bank. Safe Deposit Box #3432, key deposit, n/o May-Belle F. Doolittle | 1.00 |
| Proceeds from Commercial Account, Securities First National Bank, Long Beach Office, n/o May-Belle F. Doolittle | 3,828.61 |
| Proceeds from Commercial Account, Bank of America, N.T.&.S.A. Long Beach Main Office, n/o May-Belle F. Doolittle | 22,293.55 |
| Currency found in safe deposit box #3432, located at Security First National Bank, Long Beach Office, n/o May-Belle F. Doolittle | 25,004.00 |
| U.S.A. Treasury Bond, coupons received, Bosard, McCutcheon, and Coyne, attorneys, Minot, North Dakota | 135.63 |

Sundry Items

Jewelry:

| | |
|---|---|
| Item 1. One yellow metal Elgin pocket watch #1873351 | 5.00 |
| Item 2. One yellow metal American Waltham watch #4833701 with yellow metal chain | 7.00 |
| Item 3. One yellow metal Illinois pocket watch #521196 | 5.00 |
| Item 4. Four Yellow metal band rings resembling wedding rings and one yellow metal child's finger ring | 10.00 |
| Item 5. Two yellow metal link bracelets | 5.00 |
| Item 6. Two yellow metal bracelets each set with one dark stone | 5.00 |
| Item 7. One yellow metal bar pin | 3.00 |
| Item 8. Three small pieces of yellow metal | no market value" |

. "Personal belongings" do not include such things as the major items in that inventory. (*Estate of Sorensen,* 46 Cal. App.2d 35 at p. 38 [115 P.2d 241]; *Estate of Klewer,* 124 Cal.App.2d 219 at pp. 221-222 [268 P.2d 544, 41 A.L.R.2d 941].) "Household effects" are words of even less general meaning. Even if we are not directly concerned with what happened to be in the estate at the time of death (even though

death occurred only five days after the 1960 codicil) but are concerned only with the language of the documents, the actual property still serves as an excellent illustration of the difference in the language describing the legacy to the brother and sisters and the legacy to the Tafts. We cannot hold as a matter of law that they are identical. We must hold as a matter of law that the "testamentary plan" was changed and that under the latest codicil the Three Charities received a specific bequest and the Tafts received the residuum charged with estate and inheritance taxes and with expenses of administration.

The order is reversed.

Ashburn, Acting P. J., and Herndon, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied September 18, 1963.