[L. A. No. 14396. In Bank.—June 22, 1934.]

In the Matter of the Estate of WILLIAM J. PUETT, Deceased. LILLIAN M. WILSON, Appellant, v. U. T. CLOTFELTER, as Executor, etc., Respondent.

132

Chase, Barnes & Chase for Appellant.

Richard Hartley for Respondent.

WASTE, C. J.—William J. Puett died testate on January 13, 1932. At the time of his death he was the owner of an apartment in an "own-your-own" or commonly designated "community" apartment house. Through the medium of an holographic will, of which the respondent is the duly appointed and acting executor, the testator made several specific bequests and, in addition, disposed of the residuum of his estate to designated persons. Among the objects of his bounty is the appellant, a sister of his predeceased wife. The fifteenth paragraph of his will reads as follows: "To provide a furnished home for Lillian M. Wilson [appellant] of Elizabeth, New Jersey, I give and bequeath to her all my right, title and interest in the 'Mira Monte Terrace', a corporation, my certificate of membership therein Number nine (9) Apartment 'R', in the building owned by that Company *and all the personal property in said apartment 'R'.*"

The present controversy centers about the interpretation to be given to the italicized portion of the foregoing provision. However, before proceeding to a discussion of the issue, it should be stated that during the course of probate the respondent executor petitioned for and procured an order of ratable distribution, under which order, as amended *nunc pro tunc*, provision was made, in accordance with the terms of the will, for the distribution to appellant of apartment "R" and "all the personal property in said apartment R".

Contending that the phrase "all the personal property in said apartment R" should be so construed as to

include a tin box containing two promissory notes, aggregating $5,500, and a stamp and coin collection usually kept in the apartment during the testator's lifetime, the appellant petitioned the probate court for and procured an order directing the respondent executor to show cause why he should not turn over said personal property to appellant. Upon return to and after hearing had on the order to show cause, the probate court, in accordance with the contention of the respondent executor, concluded, in effect, that the testator's intent as disclosed by the opening phrase of the particular bequest here involved, to wit, "to provide a furnished home for" the appellant, suggested and required a construction of the closing and italicized phrase of the bequest limiting the same to "furnishings" found in the apartment at the time of the testator's demise. Such a construction, of necessity, excludes from the operation of the bequest the tin box and the notes therein contained and the stamp and coin collection. We are satisfied from a reading of the particular bequest here involved that it was the testator's desire and intention, as evidenced by the language employed, to provide the appellant with "a furnished home" and that in view of this clearly expressed intention the concluding language of the bequest should be so interpreted as to cover only the furnishings and bric-a-brac incidental to the maintenance of the apartment. Such a construction is consistent with and does no violence to the testator's expressed intention. It is generally recognized that a testamentary instrument is to be examined with a view to discovering the decedent's testamentary scheme or general intention, and that the apparent meaning of particular words, phrases and provisions is to be subordinated to this scheme, plan or dominant purpose. The technical import of words should not prevail over the obvious intent of the testator. In *Estate of Koch*, 8 Cal. App. 90 [96 Pac. 100, 101], a bequest covering, in part, "all my belongings" was held not to include money in view of the apparent intent of the testatrix to dispose of furniture, clothes, pictures, jewelry and things which she ordinarily used for her personal comfort.

In *Andrews* v. *Schoppe*, 84 Me. 170 [24 Atl. 805], where the will disposed of certain enumerated household articles, furniture, beds and "all other articles of personal prop-

erty", it was held that the latter words must be read and construed in connection with the words preceding them, and that, when so read and construed, the words did not include promissory notes found among the effects of the decedent.

It was held in *Tallman* v. *Tallman*, 3 Misc. 465 [23 N. Y. Supp. 734], that, in view of other bequests in a will, a bequest of "all my personal property" referred only to household effects.

In *Bills* v. *Putnam*, 64 N. H. 554 [15 Atl. 138], where a bequest was made to two daughters of all the decedent's "wearing apparel, household furniture and personal property of every name, nature and description", it was held that the words "personal property" were used in their restricted sense and did not include everything except real property.

We fully appreciate that the interpretation to be given a particular testamentary instrument must turn upon the language peculiar thereto and that decisions passing upon instruments of varying terminology can be of little assistance other than to announce the rules of construction. The cited authorities are of present value in that they indicate the propriety of applying to the phrase "all the personal property" a limited and restricted meaning and operation consistent with the testator's evident intention.

■ However, even if we concede, without deciding, that the quoted phrase is sufficiently comprehensive to include personal property other than furnishings and other things common to a household, the result would be the same. The testator very definitely limited the bequest to the appellant to personal property "in said apartment R". There is no evidence in the record indicating that either the promissory notes or the stamp and coin collection were in the apartment at the testator's death, the time whereof his will speaks. The executor testified that "a number of months before Mr. Puett's last illness he told me that he had a tin box and some things in it, and took me up to the apartment and showed me the box and where he kept it . . . then he said to me, 'In case I ever become seriously ill or have to be removed to a hospital, I want you to promise me that you will get this box, take it out of the apartment and keep it in some safe place for me' ''; that

the testator said, "he didn't want it in the apartment house at the time he died under any circumstances"; that late in December, 1931, a few weeks prior to the testator's demise, and when he was about to be taken from the apart ment to a hospital, he said to the witness, "don't forget that box when you leave here. I think this is the last"; that the witness thereupon, and at the testator's request, removed the box and its contents from the apartment, and that at the time of the testator's death they were in a safe in the office of the witness.

As to the stamp and coin collection the respondent executor testified that it never had been in his possession; that he had seen it but once, on an occasion subsequent to the testator's demise; that it was then in the possession of the testator's former housekeeper, who brought it to his office and presented satisfactory proof that it did not belong to the estate, but had been "given [to] her by Mr. Puett long before he died".

While there are some conflicts in the evidence, the fore-going is amply sufficient to support the lower court's finding that the promissory notes and stamp and coin collection were not included in the bequest to appellant because they were not "in said apartment" at the time of the testator's demise. This, together with the reason first above mentioned, viz., that the words "personal property", appearing in the bequest, were used in a limited and restricted sense with the apparent intention of excluding said promissory notes and stamp and coin collection from the operation thereof, substantiates the lower court's ruling.

We have examined appellant's contentions and the authorities cited in support thereof. They do not suggest a different conclusion. We are not inclined to follow the several authorities cited from other jurisdictions to which appellant refers us in support of the proposition that the will speaks from the date of its execution in so far as the properties to pass thereunder are concerned. The cases are distinguishable and each turned on its own peculiar facts. Here, the place of location of the bequeathed property, designated in the will as "in said apartment R", was not merely descriptive but, in our opinion, constituted a limitation on the property to pass at the time of the testator's demise. It was within the testator's power to

remove any portion of his property from the apartment and thus preclude it from passing under the particular bequest here involved. Such removal does not, as appellant urges, constitute the making of an oral will.

For either or both of the above reasons the order or "judgment" appealed from is affirmed.

Shenk, J., Langdon, J., Curtis, J., and Preston, J., concurred.