[Civ. No. 20087.    Second Dist., Div. Two.    Mar. 29, 1954.]

Estate of ELIZABETH KLEWER, Deceased.    MRS. G. E. NISSEN, Respondent, v. ARNO KOCH, Appellant.

George W. McDill for Appellant.

Harry V. Peetris for Respondent.

FOX, J.—Decedent left a will, which she wrote, that reads as follows:

"I give Mrs. G. E. Nissen my Rosewood Settee when I pas*t* on. Also my personal things."

The testatrix left an estate in excess of $25,000 consisting of cash in bank, stocks and bonds, real property, promissory notes secured by trust deeds, and two metal pins. Mrs. Nissen filed a petition to obtain a construction of the will. The trial court held that decedent's entire estate passed to Mrs. Nissen under the will. The correctness of the judgment is challenged by this appeal.

Testatrix was born in Germany. She spoke English somewhat brokenly and with an accent. She never married and had no issue. Her sole heirs at law are two nephews—one a resident of Germany, the other of Brazil. She lived alone in her own home in Temple City, Los Angeles County, and passed away in November, 1951, at 76 years of age. The will had been written by her some three years earlier.

Mrs. Nissen became acquainted with decedent as a next door neighbor in 1936. She spent "about every evening" with Mrs. Nissen when they moved into the neighborhood, since Mr. Nissen then worked at night. How long this continued does not appear. Decedent was "very fond" of the Nissen baby daughter and helped to take care of her. She also gave Mrs. Nissen suggestions about her cooking and showed her "how to make little things that were very tasty." When the testatrix was ill Mrs. Nissen would take her food. She spent Christmas of 1936 in the Nissen home. From then on

until she was declared an incompetent and sent to a sanatarium in February, 1949, the Nissens provided her with Christmas and Thanksgiving dinners. It appears from the scanty transcript that some time prior to the incompetency proceedings, which Mrs. Nissen attended at the suggestion of decedent's banker, the Nissens moved elsewhere. Thereafter the testatrix was only in the Nissen home "a couple of times" because, says Mrs. Nissen, "when we moved away it was hard to get her and take her back home." The testatrix offered Mrs. Nissen her rosewood settee several times prior to the execution of the will on September 29, 1948, but Mrs. Nissen had declined to accept it, though she had expressed admiration for it. On that afternoon testatrix had called the Nissens and asked Mrs. Nissen to come down. On the way to a dinner engagement they, with Mrs. Nissen's mother, visited the testatrix, who was in bed with a cold, "for a few minutes." Testatrix again offered Mrs. Nissen the settee and wanted them to take it home that night. This, of course, was impossible. "Then," says Mrs. Nissen, "she asked me to get a piece of paper out of her night stand, that she wanted to make a will, and for my mother and my husband to sign it." Decedent appears to have been somewhat of a recluse and to have lived in a very frugal manner.

In the interpretation of a will, ascertainment of the testator's intention is the fundamental rule of construction, to which all others are subordinate. (*Estate of Salmonski*, 38 Cal.2d 199, 209 [238 P.2d 966] ; *Estate of Lawrence*, 17 Cal.2d 1, 6 [108 P.2d 893] ; *Estate of Rutan*, 119 Cal.App.2d 592, 598 [260 P.2d 111] ; Prob. Code, § 101.) · In ascertaining such intention we naturally first look to the language used in the will. Here, after devising her settee to Mrs. Nissen, the testatrix added, "Also my personal things." What property does this expression cover? Probate Code, section 106, provides that : "The words of a will are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected, and that other can be ascertained."

*In re O'Brien's Estate*, 155 Misc. 803 [280 N.Y.S. 679], is parellel to the instant case. There the will read : "Mrs. Eliz. Donnelly, can have all my personal things, and furniture Radio, etc." There, as here, the legatee was not related to decedent and the testator also left, as in this case, a relative to whom he gave nothing. The O'Brien decision turned upon

the intention of the testator in using the expression ''personal things.'' In interpreting these words the court said: ''There is no intimation in the will that he used the words in any sense other than their usual or ordinary meaning, to wit, goods and items of property having a more or less intimate relation to the person of the possessor . . . There is nothing to indicate that the testator, in executing this will, had in mind any property other than his personal articles and his household things and furniture.'' This interpretation is in harmony with the ordinary sense in which the word 'personal' is used; viz., ''pertaining to the person or bodily form.'' (Ballentine's Law Dictionary.) ■ The expression most closely related to ''personal things'' that our courts have construed is ''personal effects.'' In fact, these expressions appear to be substantially equivalent—the former being the layman's way of saying that which the lawyer expresses in traditional language. Among the cases dealing with the expression ''personal effects'' is the *Estate of Sorensen*, 46 Cal.App.2d 35 [115 P.2d 241]. There the question arose as to whether a clause in a will bequeathing ''All jewelry and personal effects'' included money received by the testatrix for the sale of her home. It was held that the clause of the will embodying those words was not a general residuary clause and therefore did not include the money. In so holding the court went on to say that ''it is obvious that this clause refers to clothing and ornaments or·any other small articles which usually attend the person . . . (p. 38).'' The court relied on and quoted from *Barney* v. *May*, 135 Minn. 299 [160 N.W. 790], wherein it was held that neither money nor securities passed under the term ''personal effects.'' ''In common understanding,'' says the Minnesota court, ''the expression 'personal effects,' without qualifying words, includes only such tangible property as attends the person, or, as variously stated, 'such tangible property as is worn or carried about the person' (citations), or 'goods and items of property having a more or less intimate relation to the person' . . .'' (See to the same effect: *Estate of Douglass*, 70 Cal.App.2d 279 [161 P.2d 66]; *Child* v. *Orton*, 119 N.J.Eq. 438 [183 A. 709]; *Gaston* v. *Gaston*, 320 Mass. 627 [70 N.E.2d 527]; *Carr* v. *Railton*, 66 R.I. 225 [18 A.2d 646].)

Petitioner relies heavily on *In re Arnold's Estate*, 240 Pa. 261 [87 A. 590]; and *In re Olsen's Estate*, 9 Cal.App.2d 374 [50 P.2d 70]. It is true that in the Arnold case the words ''and other personal things'' were used by the testatrix and it was held that her entire personal estate passed to her sisters

under this language. In that case, however, the court found that it was the habit of the testatrix to speak of her property, which consisted of stocks, bonds, cash, household furniture, jewelry and clothing (but no real estate), as her "things." The testimony of the testatrix' habit was "so full and emphatic" that it constituted "strongly persuasive evidence that by the words 'and other personal things' she meant her entire residuary personal estate . . ." (P. 591 [87 A.].) ■ There was no such evidence in the instant case, and no reasonable basis for an inference that the testatrix used the words in other than their ordinary sense. In the Olsen case, *supra*, there were numerous bequests and finally a provision that "all my personal property" shall go to certain named persons. In view of the other provisions of the will, the context in which the language was used, the obvious unfamiliarity of the testatrix with the technical meaning of the words "personal property" it was held that the testatrix' real property was also included. This was in harmony with decedent's testamentary scheme and plan, and such an intention was readily ascertainable. ■ Here, however, there is no testamentary plan or scheme, and no discernible intention on the part of the testatrix to will her money, securities and home to petitioner. In the language of the *Estate of Maloney*, 27 Cal.App.2d 332 [80 P.2d 998], "to so hold would be to enter the field of conjecture and amount to a rewriting of the testatrix's will . . ." (P. 336.)

Petitioner relies on the presumption against intestacy. ■ There is, however, "no room for application of the rule [against intestacy] if the testator's language, taken in the light of surrounding circumstances, will not reasonably admit of more than one construction. A court's inquiry in construing a will is limited to ascertaining what the testator meant by the language which was used. ■ If he used language which results in intestacy, and there can be no doubt about the meaning of the language which was used, the court must hold that intestacy was intended. A testator has the right to make a will which does not dispose of all of his property but leaves a residue to pass to his heirs under the law of succession . . . To say that because a will does not dispose of all of the testator's property it is ambiguous and must be construed so as to prevent intestacy, either total or partial, is to use a rule of construction as the reason for construction." (*Estate of Beldon*, 11 Cal.2d 108, 112 [77 P.2d 1052]; *Estate of De-Moulin*, 101 Cal.App.2d 221 [225 P.2d 303]; *Estate of Baird*,

120 Cal.App.2d 219, 226 [260 P.2d 1052].) ▮ A will is not open to construction merely because it does not dispose of all of the testator's property. "Courts are not permitted, in order to avoid a conclusion of intestacy, to adopt a construction based on conjecture as to what the testator may have intended, although not expressed." (*Estate of Hoytema*, 180 Cal. 430, 432 [181 P. 645]; *Estate of Beldon, supra.*) ▮ Here there is no testamentary plan or pattern in the two-line instrument. The extrinsic circumstances fail to supply any such plan or pattern. Testatrix simply willed petitioner her rosewood settee, which was her choicest piece of furniture, and for which petitioner had frequently expressed admiration. Then, apparently, as an afterthought, she added: "Also my personal things." To say that her securities, money and real property passed to petitioner under this phraseology would be to rewrite her will, and to substitute the court's conjecture for the testatrix' intention. (See *Estate of Clippinger*, 75 Cal. App.2d 426, 430-431 [171 P.2d 567].)

The portion of the judgment from which this appeal is taken is reversed with directions to enter a decree in accordance with the views expressed herein.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied April 15, 1954.