[Civ. No. 5420.   Fourth Dist.   Sept. 27, 1956.]

Estate of KATHERINE OLSON, Deceased. PHIL E. HARD-
ING, Appellant, v. INEZ H. KEPPNER, Respondent.

Dorman & Dorman for Appellant.

Charles T. Bumer, Jr., for Respondent.

GRIFFIN, Acting P. J.—Katherine Olson died testate on December 31, 1954, leaving a holographic will which was duly admitted to probate. It reads, in its entirety, as follows:

"March 30 - 48

"In case of my Death a very short Memorial Service at Benbough Mortu*ray*. Every thing strictly private no flowers notify Mr. & Mrs. Gustav Keppner, 1927 Grand ave Butte Montana I want Inez my Daughter to have all My Personal belongings that is Mrs. Keppner Phil Harding my son $1 dollar—dont notify any one else my two Sisters are very old and Widows and unable to come

"Mrs. V. E. Olson
"No Hardings Please        "San Ysidro Cal.
    my last wish"

The testatrix was survived by six heirs, all of whom filed written statements or petitions to determine heirship, namely, Inez Keppner, daughter, Phil E. Harding, son, and four sons and daughters of Ruth Zabel, predeceased daughter of the testatrix. The claim of each of the four grandchildren is for one-fourth of one-third of the property of the decedent. The claim of Inez H. Keppner is for two-thirds of the residue of the estate after payment of the $1.00 legacy to Phil E. Harding. Harding claims one-third of the residue of the estate upon the theory that by the will he received only $1.00; that only certain articles intimately associated with the person of the testatrix were bequeathed to his sister Inez; and that since no disposition was made of the residue of the estate he is entitled to his share as an heir at law in the bulk of her estate, which is alleged in several of the claims of interest and found by the court to be her "separate property only."

No extrinsic evidence was offered or received in the interpretation of the will. The court found generally that the testatrix meant, by using the phrase "I want Inez my daughter to have all My Personal belongings" that said will makes effective distribution of the remainder of her entire estate, and accordingly the daughter is entitled to a two-thirds interest in it after payment of the $1.00 bequest.

As opposed to this finding appellant cites some cases and authority to the effect that a court cannot, under the guise of

construction, make a will for the testatrix in the place of the one she has made. He claims that the phrase ''personal belongings'' in the California cases has been given a restricted effect; that it does not apply to money, securities or real property, and must be limited to chattels susceptible of identification and manual delivery, citing such authority as *Estate of Spreckels,* 162 Cal. 559 [123 P. 371]; *Estate of Koch,* 8 Cal. App. 90 [96 P. 100]; *Estate of Carr,* 93 Cal.App.2d 750 [209 P.2d 956]; *Estate of Klewer,* 124 Cal.App.2d 219 [268 P.2d 544, 41 A.L.R.2d 941]; *Estate of Sorensen,* 46 Cal.App.2d 35 [115 P.2d 241]; *Estate of Lovejoy,* 38 Cal.App.2d 69 [100 P.2d 547]; and *Estate of Carroll,* 138 Cal.App.2d 363 [291 P.2d 976].

■ It is a fundamental rule that it is the duty of the court to construe the language of a will so that it will conform to the testator's intention as disclosed by the will rather than to defeat such intention by strict adherence to the technical sense of particular words. (*Estate of Kisling,* 68 Cal.App.2d 163 [156 P.2d 57]; *Estate of Akeley,* 35 Cal.2d 26 [215 P.2d 921, 17 A.L.R.2d 647].) ■ The apparent meaning of particular words, phrases or provisions must be subordinated to the testamentary scheme, plan or dominant purpose of the testator. (*Estate of Kruger,* 55 Cal.App.2d 619 [131 P.2d 619]; *Estate of Wilson,* 184 Cal. 63 [193 P. 581].) ■ In the construction of wills the language used must be liberally construed with a view to carrying into effect what the will as a whole shows was the real intent of the testator. (*Estate of Hoytema,* 180 Cal. 430 [181 P. 645].)

■ It is apparent from the instrument that the words of the testatrix specifically disinherited her son, and it was her desire and intent to avoid intestacy and leave her entire estate to her daughter by the words ''all My Personal belongings.'' ■ The very fact that the testatrix made a will raises a presumption that she intended to dispose of all of her property. (Prob. Code, § 102; *Estate of Akeley, supra*; *Estate of Olsen,* 9 Cal.App.2d 374 [50 P.2d 70].) ■ Whenever a disputed word or phrase may be reasonably given either of two meanings, that meaning should be given which will prevent intestacy, either entire or partial. (*Estate of Soulie,* 72 Cal.App.2d 332 [164 P.2d 565].)

■ In examining the will by its four corners and in the light of these rules, it does appear that the words ''all My Personal belongings,'' as used in it, were susceptible of meaning ''all of my own property.''

In *Estate of Kruger,* 55 Cal.App.2d 619, 624 [131 P.2d 619], in discussing a will where the word "belongings" was used, the court said:

"The word 'belongings' used by the testator with reference to the bequest to his wife, is generally understood as including the property that one owns, and it is not infrequently used in that broad sense; and in the instant case we feel that the word may reasonably be used to include all of the testator's remaining property when we consider how the word 'belongings' is ordinarily understood by the lay mind."

▆ In the instant case the will was drawn by the testatrix and from its appearance she was a person unlearned in the law. This fact may be considered in interpreting the meaning of the words used. (*Estate of Soulie,* 72 Cal.App.2d 332 [164 P.2d 565]; *Estate of Henderson,* 161 Cal. 353 [119 P. 496].) Black's Law Dictionary defines "belongings" as follows: "That which belongs to one; property; possessions;—a term properly used to express ownership." Ballantine's Law Dictionary [Supp. 1954] in discussing the word "belongings" says:

"Although the word (belongings) as used in a will, has, on occasion, been restricted to such chattels as are peculiarly attached to the person, it has more frequently been construed broadly, under the language of the particular wills involved, to include personal property of every nature and even real estate."

In *Estate of Olsen,* 9 Cal.App.2d 374, 381 [50 P.2d 70], the court interpreted the phrase "all my personal property" as meaning "all my own property" or "all my property which I own personally."

▆ In the instant case, besides giving appellant only $1.00 the testatrix indicates an express desire that she is only remembering her loved ones and that her son, a "Harding" should not take any other part of her property.

In *Estate of Schuster,* 137 Cal.App.2d 125 [289 P.2d 847], it was held that although the primary meaning of the term "effects" is personal property, it is a very general term and, when used in a will, may include realty, where that appears to be the testator's intent; that whether the word "effects," as used in a will, includes realty depends on the context and the surrounding circumstances; that in the absence of controlling language in a will to the contrary, it is presumed that the testator intended to dispose of his entire property; and

that if the trial court's interpretation of a will is reasonable and consistent with testatrix' intention, the reviewing court will not substitute another interpretation, even if it may seem equally tenable. In *Estate of Carroll*, 138 Cal.App.2d 363 [291 P.2d 976], it was held that a construction of a will which leaves no intestacy as to any part of the estate is preferred.

The authorities relied upon by appellant are factually distinguishable. It appears to us that the finding of the trial court is reasonable and that from the will itself the intent of the testatrix was sufficient to show that the testatrix intended to disinherit the son by leaving him only $1.00, and to leave the daughter the remainder of her entire estate.

Judgment affirmed.

Mussell, J., and Burch, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 21, 1956.

*Assigned by Chairman of Judicial Council.