[Civ. No. 24225.   First Dist., Div. Four.   Nov. 29, 1967.]

Estate of HARRIET B. SMITH, Deceased. JUDITH E. WALES, Petitioner and Appellant, v. BETSY SMITH MILLS et al., Objectors and Respondents.

Thomas J. Koerber and Edward L. Lascher for Petitioner and Appellant.

O'Melveny & Myers, Allyn O. Kreps, Thomas J. Ready and Allen L. Neelley for Objectors and Respondents.

CHRISTIAN, J.—Judith E. Wales, one of the legatees under the will of decedent Harriet B. Smith, appeals from an

order entered pursuant to Probate Code, section 1080, determining interests under that will (and a codicil).

The last of a series of professionally drafted wills was executed by testatrix on July 19, 1963. The property subject to that will was a comparatively small portion of the total estate owned by Miss Smith; she had already provided for the management and ultimate disposition of other property through an *inter vivos* transfer in trust to United California Bank. The will provided for five charitable bequests totaling $9,000 and a $10,000 cash bequest to appellant Judith Wales, a friend who had lived with testatrix during the last few years. Two other specific bequests were made and the residue was given to two cousins, respondents Mills and McDonald. The will contained precatory language asking ''my said cousins to carry into effect any request I may leave with them as to the distribution of certain items of tangible personal property, but without intending to impose any legally enforceable obligation upon them to do so.'' On October 10, 1965, testatrix signed and dated a handwritten document which began: ''To go with my will for the disposal of Household belongings and Personal items.'' From a reading of the entire instrument,[1] it may well be questioned whether decedent intended by it to express any testamentary directions whatever. There is a strong possibility that her only intention was to give helpful advice to her survivors regarding the disposition of household articles and miscellaneous rummage which she regarded as too insignificant in pecuniary value for inclusion in her probate estate. That interpretation finds some support in the above-quoted provision of the formal will which expressly anticipated that testatrix might leave a separate and legally unenforceable indication of her advice in that regard. But no

[1]''To go with my will for the disposal of Household belongings and Personal items.

''Mrs. Wales has boxes in my garage and my basement which belong to her personally, besides the things in her room. There is some glass in my china closet which belong to her.

''Kimi Matsumuni has her clothes and large doll in a case and a television but I think nothing else except a few knick-knacks.

''Mrs. Wales to have any of the Furniture or rugs that she may want. Dishes and kitchen utensils are for her to take what she wants. Otherwise the Pasadena Art Museum may have them for their annual Treasure sale.

''My personal belonging Mrs. Wales may be disposed of in any way she thinks they will do the most good.

''Signed this Day October 10, 1963.

''Harriet B. Smith
621 So. Sierra Bonita
Pasadena, California''

issue is presented to us concerning the testamentary status of the paper; the executor of the formal will, United California Bank, offered it for probate as a holographic codicil. No one opposed the bank's petition, and the paper was admitted to probate.

At the hearing on Judith Wales' Petition to Determine Interests, she contended that the expression ''my personal belonging'' was ambiguous. ■ Where more than one testamentary instrument is involved, they are to be construed together as a single instrument. (Prob. Code, § 101.) As we read the words ''personal belonging'' in the context of the language used in the so-called codicil, and in relation to the comprehensive testamentary plan laid down in the formal will, we do not see any ambiguity calling for a resort to extrinsic evidence. ■ A will must be construed according to the intention of the testator *as expressed therein* and this intention must be given effect as far as possible. (*Estate of Lawrence* (1941) 17 Cal.2d 1, 6 [108 P.2d 893]; *Estate of Salmonski* (1951) 38 Cal.2d 199, 209 [238 P.2d 966]; *Estate of McLaughlin* (1966) 243 Cal.App.2d 516, 518 [52 Cal.Rptr. 543].) ■ In determining the intent of the testator the apparent meaning of the words, phrases and provisions in the will must be subordinated to the dominant testamentary scheme or purpose. *Estate of Puett* (1934) 1 Cal.2d 131 [33 P.2d 825]; *Estate of Kruger* (1942) 55 Cal.App.2d 619 [131 P.2d 619]; *Estate of Gansner* (1963) 222 Cal.App.2d 390, 394 [35 Cal.Rptr. 213].)

■ The trial court nevertheless concluded that the expression, ''my personal belonging,'' was ambiguous as to what belongings were meant. Extrinsic evidence was received, showing that the formal will was carefully coordinated with the *inter vivos* trust held by respondent bank. That trust had been amended by testatrix after the date of the codicil so as to indicate that she continued to regard the trust and the formal will as constituting an integrated and complete estate plan. Such an understanding on her part would have been utterly inconsistent with the intention, now attributed to her by appellant, to give appellant by means of a codicil a general power of appointment covering the entire residue of the estate.[2]

The attorney who drafted the will testified at the hearing on the petition to determine interests that he had suggested when the formal will was executed that the testatrix write out

---

[2]There was no realty in the residue of the estate.

a separate list advising what should be done with articles left in her house. He neglected to warn her against writing out such a paper in her own handwriting, and dating and signing it; hence, it is suggested, the supposed holographic codicil came into being.

Appellant testified that testatrix characterized the assets which she withheld from the trust and managed herself as her "personal account." But this evidence sheds little light on what testatrix meant by "my personal belonging." Moreover, since she often referred to her securities, property and cash as her *personal account,* one might conclude that a designation of "my personal belonging" excluded those items of substantial monetary value.

From this evidence the trial court determined that the codicil created a power of appointment only as to property included in item nineteen of the inventory: "Personal belongings, including 2 man's [*sic*] open face watches and one times [*sic*] wristwatch." That determination was consistent with the view taken by the executor and the other respondents; appellant had been left in control of miscellaneous articles remaining in testatrix' residence—some appellant had disposed of and some she kept, all generally in keeping with the terms of the codicil as interpreted by the court.

Judith E. Wales contends on appeal that the court was bound to interpret the words "my personal belonging" in the broad sense in which "personal property" is used in law to mean every form of property interest which is not realty. Appellant relies upon such cases as *Estate of Kuttler* (1960) 185 Cal.App.2d 189 [8 Cal.Rptr. 160], *Estate of Olson* (1956) 144 Cal.App.2d 694 [301 P.2d 501], and *Estate of Kruger, supra,* 55 Cal.App.2d 619, in which under varying circumstances such expressions as "my belongings," "all my personal belongings," and "the rest of my belongings" have been broadly construed to include more than tangible articles associated with domestic or personal use. But those decisions do not stand for a rule that similar language must be given a broad and inclusive construction without regard to the context or the decedent's entire testamentary plan. For example, in *Estate of Klewer* (1954) 124 Cal.App.2d 219, 220 [268 P.2d 544, 41 A.L.R.2d 941], the holographic will read "I give Mrs. G. E. Nissen my Rosewood Settee when I past [*sic*] on. Also my personal things." Ascertaining the testatrix' intent from the surrounding circumstances, the Court of Appeal rejected a contention that "my personal things" should be

given a wide construction, even though a partial intestacy resulted. (Also see *Estate of Salmonski, supra,* 38 Cal.2d 199, 209.)

The construction applied to the disputed language by the trial court in this case is strongly supported by the context in which the words were used, and by the indications of intent which emerge from the total plan embodied in the formal will and the codicil.

The order is affirmed.

Devine, P. J., and Rattigan, J., concurred.