[Civ. No. 24858.   First Dist., Div. Two.   May 28, 1968.]

Estate of FRED G. HAMPTON, Deceased. WELLS FARGO BANK, Petitioner and Respondent, v. FRANCES CLARK, Objector and Appellant; BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY, Claimant and Respondent.

Sanford A. Berliner and Morris Hyman for Objector and Appellant.

Luther A. Clark for Petitioner and Respondent.

McCutchen, Doyle, Brown & Enersen and Albert J. Moorman for Claimant and Respondent.

TAYLOR, J.—The niece of the testator appeals from a portion of the judgment of preliminary distribution decreeing that certain securities be distributed to respondent trustee, Wells Fargo Bank (hereafter bank), to be given ultimately, after the lifetime support of the testator's sister and one Dorothea Young, to respondent residuary legatee, Leland Stanford Junior University, rather than to the niece as requested in her amended petition for heirship. The niece contends that: 1) the phrase "all my personal belongings," as used in paragraph THIRD (b) of the will, included all of the testator's property not otherwise specifically bequeathed; and 2) the trial court erred in determining the matter as a question of law, as the phrase is ambiguous and required extrinsic evidence.

Fred G. Hampton died in February 1966 and his formal witnessed will of December 14, 1964, was admitted to probate. The total assets of the estate amounted to $284,309.37 and consisted of one parcel of real property valued at $32,000; cash, $91,761.56; loans and accrued interest, $34,271.13; securities valued at $116,971.16; life insurance at $3,743.52; an automobile at $565; household furnishings at $3,855.50; shop equipment at $812.50, as well as jewelry and tangible personal effects valued at $320.

The first paragraph of the will indicated that the testator was a childless widower. The second paragraph provided, so far as pertinent: "As soon as may be practicable after my demise, my executor hereinafter named shall sell and convert into cash all my real property, household furniture and furnishings, and equipment in my work shop." The third paragraph made specific bequests to a number of persons including appellant and, so far as pertinent, provided: "I bequeath and devise the following sums of money and other property to the following persons: . . .

"(b) To my niece, FRANCES CLARK, the total sum of Thirty Thousand Dollars ($30,000.00). Provided, the intent and purpose of this bequest is for the education of her children, and said sum shall be paid in the manner following: Five Thousand Dollars ($5,000.00) at the time of initial distribution under this will, and five (5) further installments of Five Thousand Dollars ($5,000.00) each, in each succeeding year thereafter. I also leave to Frances Clark all *my personal belongings* which are not herein otherwise disposed

of, specifically excepting therefrom my real property, household furniture and furnishings, shop equipment, and my automobile." (Italics added.)

The fourth paragraph of the will sets up a residuary trust to be administered by the bank, and designates Stanford University as the residuary legatee. The life beneficiaries of the trust are the testator's sister, Blanche Wander, and housekeeper, Dorothea Young, who are to receive payments of $400 per month or more each, commencing on the first day of the month following the death of the testator.

The trial court concluded, as a matter of law, that the phrase "personal belongings" in paragraph THIRD (b) was used in its narrowest sense of chattels susceptible of identification and manual delivery. Accordingly, the decree of preliminary distribution provided that appellant receive the jewelry and personal effects valued at $320, and the $30,000 in trust for the education of her children, and that the bank, as trustee, receive $15,000 in cash and certain securities.

Appellant argues that the phrase "personal belongings" was used in the broadest sense to include all of the property not otherwise disposed of, because the real property, household furnishings and shop equipment were specifically excluded therefrom; that since items excluded from the phrase in paragraph THIRD (b) are identical to the items mentioned in paragraph SECOND, the corpus of the residuary trust created by paragraph FOURTH was to consist only of the proceeds from the sale of the real property, household furniture and furnishings and shop equipment. She also contends that the language used was ambiguous and that she should have been permitted to introduce extrinsic evidence concerning the testator's intent. ▮ We reject appellant's contention and conclude that the trial court's narrow interpretation of the phrase "personal belongings" is the only one that can be reasonably inferred from a consideration of the entire will.

▮ Where no extrinsic evidence has been introduced, the construction of an allegedly uncertain provision in a will is a question of law on which the independent judgment of the court may be exercised. It is the duty of the court to make the final determination in accordance with the applicable principles of law (*Estate of Brown*, 199 Cal.App.2d 274 [18 Cal. Rptr. 435]). ▮ The paramount rule, to which all others must yield, is that a will is to be construed according to the

intention of the testator, as expressed therein, and this intention must be given effect as far as possible (*Estate of Lawrence*, 17 Cal.2d 1, 6 [108 P.2d 893]). :

The whole will is to be considered, and the testamentary intent is to be ascertained therefrom rather than from any one sentence or paragraph (*Estate of Northcutt*, 16 Cal.2d 683, 689 [107 P.2d 607]). The testamentary instrument is to be examined with a view to discovering the decedent's testamentary scheme or general intention, and the apparent meaning of particular words, phrases or provisions is to be subordinated to this scheme, plan or dominant purpose (*Estate of Puett*, 1 Cal.2d 131, 133 [33 P.2d 825]; *Estate of Christen*, 238 Cal.App.2d 521 [48 Cal.Rptr. 26]). Technical words in a will are to be taken in their technical sense, unless the context clearly indicates a contrary intention (Prob. Code, § 106). ▉ Where a will is drafted by a lawyer, it is assumed that terms therein were used in their full technical sense (*Fuller* v. *Fuller*, 229 Cal.App.2d 532 [40 Cal.Rptr. 393]).

▉ Here, the will was drafted by a competent attorney who, in the absence of any indication to the contrary, is assumed to have used the phrase "personal belongings" in the limited technical sense of chattels susceptible of identification and manual delivery (*Estate of Doolittle*, 218 Cal.App.2d 691 [32 Cal.Rptr. 649]). Looking at the will as a whole, it is clear that the principal purpose of the testator was to take care of his sister and housekeeper. He had no children or other relatives except the various nieces and nephews to whom specific legacies were left by paragraph THIRD. Appellant's argument, carried to its logical conclusion, would make her the residuary heir to the bulk of the estate. If the testator had intended this, he would have made her the residuary legatee. This he did not do. Significantly, appellant's argument completely ignores the existence of Stanford as the residuary legatee.

Appellant, relying on *Estate of Olson*, 144 Cal.App.2d 694 [301 P.2d 501], *Estate of Kruger*, 55 Cal.App.2d 619 [131 P.2d 619], *Estate of Kuttler*, 160 Cal.App.2d 332 [325 P.2d 624], and *Estate of Kuttler*, 185 Cal.App.2d 189 [8 Cal.Rptr. 160], argues that the phrase "all my personal belongings" is generally understood to include all of the property one owns. In the *Kruger* and two *Kuttler* cases, the operative word was the broader term "belongings." Of the four cases cited by appellant, only the *Estate of Olson, supra,* involved the con-

struction of the term "personal belongings."[1] Furthermore, all of said cases involved the construction of holographic wills drawn by testators unfamiliar with technical language and lacking residuary clauses. In the absence of a separate residuary clause and when taken together with the strong presumption against intestacy, the court in each of the cases interpreted the phrase in question to include almost all of the property of the decedent.

However, in the instant case, the words "personal belongings," *as used by an attorney* in a will containing a residuary clause, clearly calls for a restrictive interpretation. ▆▆▆ As we recently pointed out in *Estate of Page*, 254 Cal.App.2d 702 [62 Cal.Rptr. 740], residuary clauses are generally inserted for the purpose of making a complete disposition of the property, and "are always to receive a broad and liberal interpretation, with a view of preventing intestacy as to any portion of the estate of the testator." (P. 713.)

*Estate of Randall*, 240 Cal.App.2d 85 [49 Cal.Rptr. 280], cited by appellant, is completely distinguishable from the instant case. In *Randall*, the will was drafted by an attorney. The testatrix bequeathed all of her "household goods, books, silverware, furniture and furnishings, jewelry, clothing and personal effects" to her grandniece and named a university as the residuary beneficiary. The trial court found no ambiguity in the will, refused to admit any parol evidence and awarded to the residuary beneficiary a sum in excess of $5,000 that was on deposit in the San Fernando Veterans Administration Hospital, together with other assets. The attorneys for the grandniece made an offer of proof indicating that: 1) the testatrix had been a long-time patient at the San Fernando Veterans Hospital and that the words "personal effects," as commonly used by the personnel and patients at the hospital, included any moneys on deposit in the patient's fund account; and 2) a letter from the testatrix to the father of the grandniece in which the testatrix, referring to the money she had in the patients' fund in the hospital, stated: "I have always had several hundred dollars here on deposit. . . . This

---

[1]In *Olson*, the testatrix left $1.00 to her only son and all her "personal belongings" to her only surviving daughter. The court pointed out that the technical sense of "personal belongings" was in accord with the son's position that thereby only the tangible personalty was left to his sister, so that his mother died intestate as to the residue, entitling him to one-third thereof. However, in view of the testatrix's clearly expressed intention to disinherit the son, the court concluded that it was her desire and intent to avoid intestacy and leave her entire estate to her daughter.

I want you to remember, in case of my death whatever amount of money I have here will be part of my effects,· like clothes, jewelry, etc., which you know you are to come here to claim. . . .'' (P. 87.) The appellate court held that in view of these very unusual circumstances, the trial court should have admitted the proffered evidence in order to determine whether or not the testatrix had, in fact, used the words ''personal effects'' to include her money on deposit in the hospital. Before reaching that conclusion, however, the trial court said in reference to section 106 of the Probate Code: ''We must concede, to begin with, that the words that give rise to this appeal—'personal effects—' In their ordinary sense would not include $5,000 on deposit in a veterans home.'' (P. 88.) ''The function of words is to convey thought.'' (P. 89.)

In the instant case, unlike *Randall*, appellant has at no time been able to point to any such unusual facts to indicate that the draftsman used ''personal belongings'' in any but the ordinary and limited sense in which the phrase is generally used by attorneys. ■ Appellant's argument that ''personal belongings'' is the equivalent of ''personal property'' is equally of no avail, as that term is also narrowly construed to give effect to the intent of the testator (*Estate of Freeman*, 238 Cal.App.2d 486 [48 Cal.Rptr. 1]; *Estate of Graham*, 49 Cal.2d 333 [316 P.2d 945]).

■ Appellant next argues that the testator intended to fund the trust established by the fourth paragraph of the will solely from the proceeds of the sale of property as provided for in the second paragraph thereof. However, the attorney who drafted the will would have known how to clearly and explicitly draft a provision expressing such an intent. Furthermore, the residuary trust provided that the payments to the life beneficiaries were ''to commence on the first day of the month following my death.'' Such payments could only be made from the liquid cash and securities of the testator and not out of the proceeds resulting from the necessarily delayed liquidation of the real property, household furniture and shop equipment. Appellant's contention concerning the second paragraph is sheer speculation, unsupported by logic or other provisions in the will. ''Mere speculation cannot be allowed to do duty for probative facts'' (*Estate of Beebee*, 118 Cal.App.2d 851, 858 [258 P.2d 1101]).

■ We hold that, as a matter of law, the trial court's narrow interpretation of the technical phrase ''personal

belongings'' was consistent with the testator's manifest intentions of taking care of his sister and housekeeper and leaving the residue of his estate to Stanford. Any other interpretation would do violence to his well planned testamentary scheme. As we have concluded that the trial court correctly interpreted the language here in dispute as a matter of law, it is not necessary to discuss the remaining contentions concerning the introduction of extrinsic evidence, except to point out that appellant at no time made an offer of proof or suggested to the trial court the existence of extrinsic facts to support her theories of ambiguity.[2]

Affirmed.

Shoemaker, P. J., and Agee, J., concurred.

---

[2]At the hearing below, appellant's counsel stated: ''Your Honor, it is our contention that the Will is ambiguous on its face and extenuating—that the circumstances surrounding the testator's intent would be a question of fact. I think your Honor is correct in the event it should be determined that the Will *is not ambiguous on its face*, . . .'' (Italics added.) Thus, he conceded the correctness of the ruling below. At the oral argument on appeal, he reiterated his position that the will was patently ambiguous. We note that the facts asserted in his closing brief do not even establish a latent ambiguity.